TAYLOR, &c.
*vs*
SHEMWELL.

</div>

---

## Taylor & Tisdale *vs* Shemwell.

APPEAL FROM THE SIMPSON CIRCUIT.

*Depositions. Notice. Practice. Possession.*

JUDGE BRECK delivered the opinion of the Court.

IN 1798 Thomas Watty obtained a settlement certificate for 200 acres of land, in the county of Logan, and had, in virtue thereof, an entry and survey made. In 1800, while residing upon the land, he died, leaving two daughters, Mariam and Jemima, his only children and heirs at law. The daughters married Joseph and Zechariah Shemwell, one in 1802 and the other in 1804. In 1808 a patent issued for the 200 acres, in the name of Thomas Watty. In 1809, the husbands sold and made a joint conveyance of the land to Samuel and James Shemwell, who, in 1812, conveyed the same to William Morrow, and Morrow, in 1813, sold and conveyed the same to William Mays. A year or two afterwards, Mays, while in possession of the land, died intestate, leaving a widow and several children, from whom the appellants, defendants below, mediately or immediately obtained the

<div style="text-align:right">

EJECTMENT.

*Case* 111.

*June* 11.

Case stated.

4bm575
e118 443

</div>

TAYLOR, &c.
vs
SHEMWELL.

possession of the land and conveyances. Zechariah Shemwell died about 1826, and Joseph in 1838, and in 1841, their widows, Mariam and Jemima Shemwell, brought this action of ejectment for the land embraced in the patent, which issued in the name of their father, Thomas Watty. The land had continued in possession of Samuel and James Shemwell from their purchase, and in those claiming under them, up to the institution of this suit. The testimony, upon the trial in the Court below, conduced to establish 'the foregoing facts. Verdict and judgment for the plaintiffs, and the defendants have appealed to this Coart.

Various questions are presented by the assignment of errors. We will first notice those arising upon exceptions taken by the defendants upon the trial, to portions of the testimony.

Notice to take depositions "at the *office* of Esq. Benj. Frazier," and which appear to have been taken "at the *house* of Benj. F. Frazier, a Justice of the Peace," is well.

The defendants excepted to the depositions of David Moore and others, because they did not appear to be taken at the place named in the notice; "the notice was to take at the *office* of Esquire Benjamin Frazier, in Stewart county, Tennessee." The depositions purport to have been taken at the *house* of Benjamin F. Frazier, Justice of the Peace in Stewart county, Tennessee. We think it sufficiently certain that the depositions were taken at the house of Esquire Benjamin Frazier, in Stewart county, Tennessee, and the question then is, whether we shall presume that a county Esquire or Justice of the Peace has an office at any other place than his house. We are very strongly inclined to the opinion that such a presumption ought not to be indulged, and that the exceptions were, therefore, properly overruled. But even if the presumption were otherwise, we are satisfied that the same facts, which the depositions conduced to prove, are satisfactorily established by other testimony in the case. The admission of the depositions as testimony furnishes, therefore, no ground for reversal.

Reputation and cohabitation are generally sufficient evidence of marriage in civil cases.

The defendants also excepted to the testimony adduced by the plaintiffs upon the trial, proving the marriage of one of the lessors, by repute and cohabitation, and living together as man and wife for many years. The exceptions were overruled, and we have no doubt correct-

ly. It is certainly well settled, that evidence of repute and cohabitation, &c. is competent to establish a marriage generally, in all civil cases. Actions of *crim. con.* which may be regarded as *quasi* criminal, form, we believe, the only exception. The law was so held by this Court in *Crozier* vs *Gano and wife*, (1 *Bibb*, 357,) in an action of detinue, and in *Stover* vs *Boswell's heirs*, (3 *Dana*, 232.)

The defendants further objected, on the trial, to the deed from Samuel and James Shemwell to Morrow, and also the deed from Morrow to William Mays, which were offered on the part of the plaintiffs, going as evidence to the jury, and especially in view of the time and circumstances under which they were offered. It appears that after all the testimony in the case had been given, except these deeds, the Court instructed the jury as to the law of the case, and that the cause was then adjourned over till the day following; when the cause came up on the following day, the deeds were offered and permitted to be read, upon the statement by the counsel for the plaintiffs, that before the commencement of the term of the Court, he had made, and caused to be made by the Clerk, diligent search in the office of the Logan County Court, for said deeds, but without being able to find them; but learning from the witnesses, during the progress of the trial, the dates when the deeds were probably made, he had sent to Russellville during the preceding night, and for the first time, obtained the copies. Under such circumstances, we are of opinion it was in the exercise of a sound discretion by the Court, to permit them to be read. No new issue was thereby presented, nor does it appear the defendants were or ought to have been surprised by their introduction. They did not show nor suggest, at the time, nor in support of their motion for a new trial, that they had or could adduce any additional repelling testimony. Had the defendant's objections been placed in good faith upon this ground, it would have been in the discretion of the Court to have discharged the jury and continued the cause, instead of excluding the testimony and awarding the plaintiffs a new trial, which he would have been entitled to had the verdict been against him. The

*It is in the discretion of the Court, even after the testimony is closed [on both sides, to permit a party to adduce further evidence to a point already in issue, and in case the other party can show that he can probably repel such newly offered evidence, even to discharge the jury and continue the cause, to have a fair investigation.*

case of *Smith* vs *Smith*, (3 *B. Monroe*, 295,) is analagous to this case, on the point in question. In that case the party was permitted, after the jury was sworn, to amend his pleadings.

The remaining questions for determination arise upon the instructions given and refused by the Court, upon the trial, to the jury. As they are numerous and lengthy, we deem it unnecessary to discuss them in detail, but will consider the legal propositions which are relied upon by the counsel for the defendants, as being involved in the instructions and overruled by Court.

A possession under the deed of the husband, of the land of the wife, whether with or without warranty, is not an adverse possession during the life of the husband, and her right of entry in such case is not bared until 20 years.

And, 1st. That the vendees of the husbands of the lessors held adversely, both to the husbands and their wives, from the date of their deeds or the time of obtaining possession under them, and that a possession thus held for twenty years, would bar a right of entry in the lessors, provided they had been discovert for three years prior to the expiration of the twenty years. This proposition cannot be sustained; it is evidently at war with what we understand to be the law as well, and as we think, correctly settled. In no case within our knowledge, has possession under the husband, of the land of the wife, whether under a conveyance, with or without general warranty, been held to be adverse to the title of the wife during the life of the husband. Alienation by the husband, so far as the wife is concerned, merely suspends the right of entry during the coverture; at his death it is revived in the wife, and not barred till twenty years thereafter.

The statutes of 1796 and 1814, apply to cases in which the right of entry existed during the coverture, not to cases where that right was suspended by the alienation of the husband.

Our statutes of 1796 and 1814, the first reserving to the wife a right of entry for ten, the latter for three years after she becomes discovert, have been held to apply to cases in which a right of entry existed during the coverture, and not to cases in which her right was suspended by the alienation of the husband. But regarding the question as settled, and having no disposition to disturb it, we forbear to pursue the inquiry further. The subject was examined by this Court in *Miller* vs *Shackleford*, (3 *Dana*, 289,) and in *Deatherage* vs *Woodruff*, (3 *Monroe*, 244,) and the construction and principles recognized, which we regard as applicable to this case.

But, 2ndly. It is contended that the right of entry in the lessors, and if not in both, at any rate in the one who first became discovert, has been tolled by descent.

This proposition is maintained by the learned counsel for the defendants, plaintiffs in this Court, with much zeal and great apparent confidence, but we are not convinced that it is not equally untenable as the first proposition.

To understand the grounds relied upon in its support, it will be necessary again to advert to the facts, and state some of them with more minuteness. It appears that the husbands of the lessors conveyed the land sought to be recovered, to their brothers, Samuel and James Shemwell, who conveyed to Morrow, and he to William Mays, who, shortly after he obtained possession, in 1813 or 1814, died upon the land, leaving four children, his heirs, one of whom also died shortly after the father. The testimony also conduces to prove that the land was allotted among the children of William Mays. Arnold married one of the daughters, and obtained thereby and otherwise, one or more lots. Arnold and wife died about 1828, leaving two children, under whom the defendants claim that portion of the land, as to one or both, by purchase under a decree of Court. The lessor, Jemima, became discovert by the death of her husband, in 1825 or 1826, and the lessor, Mariam, long afterwards, about 1837. Now, when William Mays died, the husbands of both the lessors were living. His possession, therefore, as we have already seen, was friendly and in no sense wrongful or adverse to the title of the lessors. When Arnold and wife died, one of the lessors only had become discovert, by the death of her husband, about three years before; their possession was not, therefore, wrongfully obtained nor wrongfully held; but they had a right to continue in possession during the life of the husband of the other lessor. At the time of their death they had not even been in possession five years from the time the lessor, Jemima, became discovert, so that as to her, if they had even been disseizors, the descent cast upon their death would not toll her right of entry. But there was not only no disseizin, but the possession held by them

<div style="text-align: right">

TAYLOR, &c.
*vs*
SHEMWELL.

To bar a right of entry by descent cast and lapse of five years, there must have been a disseizin by the ancestor; entering and holding under plaintiff's title is not a disseizin.

</div>

was at no time even wrongful as to her. There is no proof that they ever refused to let her into possession with them, which was all she was entitled to after she became discovert. It seems to us, therefore, that there is an utter destitution of proof of any act, or of such a state of case in reference to either Mays or Arnold and wife, that descent from them or either of them would bar the right of entry of the lessors or either of them.

The Court having ruled the law upon the trial, in accordance with the views which we have taken, and perceiving no error in the proceedings, the judgment is affirmed.

*Underwood* for appellants: *Goodloe* for appellee.