Klenke v. Noonan, &c.

CASE 54—ACTION BY MARY ELLEN NOONAN, &C., AGAINST ELIZABETH
  KLENKE AND OTHERS FOR AN INTEREST IN A HOUSE AND LO. —
  JUNE 7.

# Klenke v. Noonan &c.

APPEAL FROM KENTON CIRCUIT COURT—JAS. P. TARVIN, CIRCUIT JUDGE.

FROM THE JUDGMENT DEFENDANT KLENKE APPEALS.  AFFIRMED.

RES JUDICATA—LAW OF OTHER STATES—PRESUMPTION—MARRIAGE—
  EVIDENCE.

1. A judgment unappealed from is conclusive between parties
   to the suit, not only as to all matters determined by it, but as
   to all incidental matters which might have been properly liti-
   gated therein.
2. In the absence of proof as to the law of another State, it will be
   presumed that the common law prevails.
3. Evidence in an action for land held sufficient to sustain a finding
   of marriage, on which plaintiff's title depended.

MYERS & HOWARD, FOR APPELLANTS.

      1. There has been no common law, or marriage *per verbae*,
   in Kentucky, since the Revised Statutes declared all marriages
   void except such as were solemnized according to that statute.
   Estill v. Rogers, 1 Bush, 62.
      2. Evidence that a man held himself out as a married man to
   boarding house keepers and others where he sojourned with a
   woman, is not sufficient to establish a marriage with her *per
   verbae*, even though accompanied with cohabitation.
      3. The copula must in all cases have followed not preceded
   the alleged marriage.
      4. Reputation which is sufficient to establish a marriage con-
   tract *per verbae* must be uniform, undivided, permanent, un-
   changing and in good faith.  An acknowledgment of the marital
   relation at one time and a denial at another is not sufficient to
   establish the status.

## ATTACHMENT.

      5. An attachment against a dead man's property creates no
   lien and will not authorize the chancellor to order its sale in
   satisfaction of the attachment lien.
      6. A decedent's real estate can not be subjected to payment

of his debts without the prior appointment of a personal representative and verified demand made.

7. A sale and commissioner's deed conveying property in which decedent had no interest will not pass the interests of others in the land though they were defendants and made no defense.

### AUTHORITIES CITED.

Rogers' Domestic Relation, sec. 87; Rogers' Domestic Relations, sec. 94; Schouler's Domestic Relations, sec. 26; Am. & Eng. Ency. of Law, vol. 14, p. 482; Bicking's Appeal, 2 Brewst. (Pa.), 202; Arnold v. Chesebrough, 46 Fed., 700; Estill v. Rogers, 1 Bush, 62; Sections 1640 and 1641, Ky. Stat.; *In re* Taylor, 9, p. 609, vol. 4, New York Chancery Rep., 836.

M. H. McLEAN, FOR APPELLEE.

In her petition, appellee alleges that in January, 1891, in Cincinnati, Ohio, she and John Noonan contracted to live together as man and wife; that they did so live together until the time of his death, in July, 1897; and that there was born to them as a result of said marriage, Helen Noonan and John Noonan, Jr.

To these allegations there has been entered a denial, and proof taken by both parties thereon, the issue being whether or not there existed between said Mary E. Noonan and John Noonan what is known as a common law marriage, which is recognized in the State of Ohio, the place where contracted, and if good there, is good in any other State of the Union.

According to the laws of Ohio, a man and woman may contract a marriage by mutually agreeing together to live as man and wife. There must be this mutual agreement, but this agreement may be shown to exist by the acts of the parties, and we herewith submit to the court a number of authorities in Ohio, to that effect.

### WHAT CONSTITUTES COMMON LAW MARRIAGE.

"Held, that it is to be inferred from the statement that the parties openly and mutually consented to a contract of present marriage,—then to become husband and wife, and thereafter cohabited as such, and that this constituted a legal marriage, and the man having then a wife living might upon proof of such second marriage, be properly convicted of bigamy." (Carmichael v. State, 12 O. S., 553.)

"To constitute marriage, though it is not essential that

the statutory forms be complied with, it is essential when such forms are omitted, that each of the parties contract with the other that they will, from the making of such contract, sustain to each other the relation of husband and wife so long as they both shall live, and this must be followed by cohabitation

"Adultery, however, long continued, does not constitute marriage.

"Though the relations between persons of opposite sexes may be illicit in their inception, yet this does not preclude the subsequent making of a valid marriage contract between them, without the statutory forms." (Swartz v. State of Ohio, 13 C. C., 62.)

But the contract to take each other as husband and wife must exist, and it must be entered into in the present tense, and not contemplate a future marriage.

"Mutual promises to marry in the future, though made between parties competent to contract, and followed by cohabitation as husband and wife, is not, in itself, a valid marriage." (Duncan v. Duncan, et al., 10 O. S., 181.)

### HOW SUCH A MARRIAGE MAY BE PROVED.

"The petitioner in dower must prove her marriage with the deceased. The marriage may be proved by reputation, but mere reputation of cohabitation is not sufficient." (Roberts v. Roberts, 8 W. L. J., 368, Ham. Co. Com. Pleas.)

"While the law of evidence, *ex necessitate*, permits hearsay as to pedigree; and general reputation that a man and woman lived and cohabited in a community as man and wife, has been held sufficient to establish the fact of marriage, the weight to be given to such evidence varies with the circumstances of each case." (Stewart v. Welch, 41 O. S., 483, 497.)

### AUTHORITIES CITED.

Carmichael v. State, 12 O. S., 553; Swartz v. State of Ohio, 133 C. C., 62; Duncan v. Duncan, et al., 10 O. S., 181; Roberts v. Roberts, 8 W. L. J., 368; Stewart v. Welch, 41 O. S., 483, 487; Johnson v. Dudley, 3 N. P., 196; Lawrence Ry. Co. v. Cobb, 35 O. S., 94; McCampbell v. McCampbell, 20 Ky. Law Rep., 552; Woolley's Exr. v. Greenwade's Heirs, 20 Ky. Law Rep., 624; Honaker v. Cecil, 84 Ky., 202; Snapp v. Snapp, 87 Ky., 554; Hasty v. Berry, 12 Ky. Law Rep., 240; McDaniel v. Sturm's Admr., 23 Ky., 935.

OPINION OF THE COURT BY CHIEF JUSTICE BURNAM—AFFIRMING.

This controversy involves the title and ownership of a

house and lot in Covington, Ky., which was owned by William Noonan prior to his death, in 1871. His wife, Ann Noonan, and three sons, John, William, and Charles Noonan, and one daughter, Lizzie Klenke, survived their father. The appellee, Mary Ellen Noonan, and Thomas Dunn, as next friend of her infant children, Helen and John Noonan, Jr., brought this action in the Kenton circuit court on the 30th of December, 1897, in which they allege that the appellee Mary E. Noonan and John Noonan did on or about the 1st of January, 1891—both being at that time residents of the State of Ohio—mutually consent and agree to live together as man and wife, and did thereafter cohabit and live together as such in Cincinnati, Ohio, until the death of John Noonan, in July, 1897; that Helen Noonan and John Noonan were born of this marriage, and were respectively eight and six years of age; that at the time of his death John Noonan was seised in fee simple of an undivided one-third interest in the house and lot in controversy; that it could not be divided without materially impairing its value; that Mary Ellen Noonan was entitled to one-third of the interest of John Noonan for life, and her children to the fee simple therein, subject to the life estate of their mother —and asked for a sale of the property. The defendant, Lizzie Klenke, for answer to appellee's petition, denied that the plaintiff Mary Ellen Noonan and John Noonan had agreed with each other to become man and wife, or that they had subsequently cohabited with each other as man and wife, or that as a result of such cohabitation the plaintiffs Helen and John Noonan, Jr., were born. She alleged that no marriage ceremony had ever been performed between Mary Ellen Noonan and John Noonan, as required by the laws of the place of their residence, or that either of the plaintiffs had any interest in the property in controversy. The defendant, Gus

W. Meninger filed an answer and cross-petition, in which he alleged that he was the owner of the one undivided one-fourth interest in the property which had belonged to Charles Noonan in his lifetime, by purchase, at a judicial sale pursu· ant to a judgment rendered in an action for the settlement of his estate, and united in the prayer of plaintiffs' petition for a sale of. the property. The. defendants, Lizzie Klenke and Wm. Noonan, by way of reply to the cross-petition of Meninger, said that their father, Wm. Noonan, had devised the property in controversy to his wife, Ann Noonan, and that she had occupied it until her death, on the 10th of December, 1893; that her son Charles Noonan had died in August, 1892, before his mother, unmarried and without issue, and did not at the date of his death have any right title or interest in the property—and denied that Meninger, by virtue of his purchase, had acquired any interest or title therein. Meninger responded that on the 4th of February, 1897, he brought suit against all the heirs at law of Wm. and Ann Noonan, in which he alleged that their brother Charles Noonan was at the date of his death the owner of the one-fourth interest in the property in controversy, and that in that action it was adjudged that Charles Noonan was the owner of an undivided one-fourth interest in the property, and a judgment of sale entered therein, at which sale he became the purchaser, and pleaded that the defendants Lizzie Klenke and Wm. Noonan were estopped from controverting that he was the owner of such interest. The chancellor found sufficient evidence to support the plea of a common law marriage between appellee and John Noonan, deceased, and sustained her claim and that of her children and that of Meninger to the undivided one-fourth interest of Charles Noonan, deceased, and the defendant Lizzie Klenke has appealed.

We will first consider the issues raised by the pleadings of Meninger as to the interest of Charles Noonan in the property. While appellants, in their reply to the cross-petition of Meninger, allege that their father, Wm. Noonan, devised all of his property of every kind to his wife, Ann Noonan, no copy of the alleged will is filed in the record, and it appears from the record of the chancery suit of Meninger v. Klenke that Charles Noonan was adjudged to be the owner of an undivided one-fourth interest in the house and lot in controversy in this action, and that it was sold to satisfy the claim of the appellee, Meninger, and purchased by him; that this sale was confirmed, and deed executed to the purchaser. The appellant, Lizzie Klenke, was a party to this suit, and the judgment in that case has never been appealed from, and must be held conclusive, under repeated adjudications of this court, not only as to all matters determined by it, but as to all incidental matters which might have been properly ligitated and decided therein. We there· fore conclude that, as to the Meninger branch of this case, the judgment should be affirmed.

Since the adoption of the Revised Statutes, there is in this State no such thing as a legal marriage by recognition and cohabitation alone. All· marriages, to be valid, must be solemnized and contracted in the presence of authorized persons or societies. Estill v. Rogers, 64 Ky., 62. But the question in this case must be determined by the laws of Ohio. Appellee alleged that in Ohio, where the parties lived, common law marriages are upheld, and can be proven by declarations, admissions, and cohabitation, and general reputation as to the fact. This is specifically denied by answer, and no evidence has been introduced to support the averment of the petition. Section 1640 of the Kentucky Statutes of 1903 reads as follows: "The unwritten or common law

of any of the United States may be proved as facts by parol evidence of one learned in the law, and the printed books of cases adjudged in the courts of sister States may also be admitted as evidence of such law." In Miles v. Collins, 58 Ky., 312, and Honore v. Hutchings, 71 Ky., 689, it was decided that this court would presume, until the contrary was alleged and proven, that the common law was in force in other States of the Union. It therefore follows that, in the entire absence of proof, the court must presume that the common law on the subject of marriage prevails in the State of Ohio. The question of marriage or no marriage must therefore be determined from testimony in the record. No witness has testified to the alleged parol agreement between John Noonan and appellee to live together as husband and wife. But to establish a common law marriage an express agreement to be husband and wife need not be shown. Such agreement may be implied from acknowledgment, cohabitation, and reputation, when long continued and open.

In Re Taylor, 9 Paige, Ch., 611, 4 N. Y. Ch., 836, it was decided that where a gentleman introduced a female, who was previously living with him as a housekeeper, to his friends as his wife, and from that time, for a period of 11 years, continued to cohabit with her as his wife, holding her out to the world as sustaining that relation to him, and had several children by her, who were called by his name, these facts were sufficient to authorize a court to presume an actual marriage between the parties by contract *in praesenti* at the commencement of such matrimonial cohabitation, and that the acts and declarations of the man and the other attending circumstances during their cohabitation together, being parts of the *res gestae,* are proper evidence to show the character of their intercourse—whether it was matrimonial or meretricious. In Taylor v. Shem-

well, 43 Ky., 575, it was decided that marriage could be established by repute, cohabitation, and living together as man and wife for many years. In Strode, etc., v. McGowan's Heirs, 65 Ky., 621, it was held by this court: "First, That the law presumes that every child in a Christian country is *prima facie* the offspring of a lawful union of the parents, and that the mother, by actual marriage or by cohabitation and recognition, was the lawful· wife of the father, and, in the absence of negative evidence, ·no supplemental proof of legal marriage would be necessary to legitimate the offspring. That mere rumors were insufficient to bastardize, or require positive proof of actual marriage."

In Dannelli v. Dannelli's Adm'r, 67 Ky., 59, this court said: "The mere cohabitation of two persons of different sexes, or their behavior in·other respects as husband and wife, always affords an inference of greater or less strength that a marriage has been solemnized between them. Their conduct being susceptible of two opposite explanations, we are bound to assume it to be moral rather than immoral, and credit is to be given to their own assertions, whether express or implied, of a fact peculiarly within their own knowledge. The law is unwilling to bastardize children, and throws the burden on the party who alleges illegitimacy, and, in the absence of evidence to the contrary, a child, *eo nomine,* is therefore legitimate, and the presumption of law is not likely to be repelled. It is not to be broken in upon or shaken by a mere balance of probabilities. The evidence for repelling it must be strong, satisfactory, and conclusive."

It is shown in this case that John Noonan was an idle, improvident, dissolute person, who largely lived upon the bounty of his family. John Murray, the father of appellee, testifies that he had John Noonan arrested on charge of

bastardy, and that in the presence of a magistrate he asserted that he was legally married to appellee, and would produce his license in evidence thereof, which, however, he never did, and that he would furnish rooms and take his wife and child to them the next day. Laura Lewing testifies that she kept an apartment house in Cincinnati; that she rented one of her rooms to John Noonan and the appellee, and that they occupied it with their child for five or six weeks; that during this period Noonan habitually spoke of appellee as his wife, and so introduced her to other lodgers and persons with whom they came in contact. Mrs. Heidel testifies that, more than ten years before the death of John Noonan, he and the appellee, shortly after the birth of Helen Noonan, occupied rooms in her house for about six months, and that both of them habitually spoke of each other as husband and wife, and that Noonan introduced appellee as his wife, and escorted her to public entertainments. It is also shown by the testimony of quite a number of other persons with whom Noonan associated that he always spoke of appellee as his wife, and the infants as his "kids." It is also shown beyond controversy that both of the children always bore the name of Noonan, and were known and recognized as his children. While a number of witnesses living in the vicinity of the home of John Noonan's mother and friends of the family testify that he was an unmarried man, and so spoken of by the family, this character of testimony is not sufficient to overcome the positive testimony of unimpeached witnesses to the contrary.

Upon the whole case, we have reached the conclusion that we would not be justified in disturbing the judgment of the trial court.

Judgment affirmed.

Petition for rehearing by appellant overruled.