## Clay v. Clay.

(Decided March 9, 1923.)

### Appeal from Bourbon Circuit Court.

1. Deeds—Not Avoided by Duress of Which Purchaser Had no Knowledge.—The duress, if any, under which plaintiff executed deeds to her brother who conveyed the property to defendant, cannot defeat defendant's rights if he had no knowledge of that duress, even though he participated in the duress whereby plaintiff was induced to join in the conveyance by the brother to defendant.

2. Deeds—Release of Grantee's Rights in Grantor's Lands is Consideration for Similar Release by Grantor.—Where a brother and sister held land under their father's will, which provided that if either died without heirs his tract should go to the other, the execution of a quitclaim deed by the brother releasing his interest in his sister's land was sufficient consideration for the execution by her of a similar deed releasing her interest in his land.

3. Deeds—Contingent Interest or Executory Devise can be Conveyed.—The interest of a sister in her brother's land under will providing that in the event of the brother's death without children the sister should inherit the land, whether it be a contingent interest or a vested defeasible interest created by an executory devise, is one which the sister could validly convey under Ky. Stats., section 2341.

4. Limitation of Actions—Pendency of Another Suit by Plaintiff is Not Restraint of Action.—The pendency of a prior suit by plaintiff and the committee of her insane brother, for the same relief sought in the present suit is not the restraint or suspension contemplated by Ky. Stats., section 2544, providing that the time covered by the restraint shall not be estimated in the application of any statute of limitations.

5. Limitation of Actions—Answer Pleading Limitations Against Attack on Deed for Duress Held Good.—An answer to a petition to

set aside for duress three deeds executed by plaintiff to defendant's grantor, which alleged that more than five years had elapsed since the execution of two of the deeds and more than 25 years since the execution of the first deed, was good on demurrer, since plaintiff necessarily had knowledge of the alleged duress or of any fraud perpetrated on her at the respective times of the execution of those deeds.

6. Judgment—Issue Raised by Pleading Adjudicated by Dismissal of Action, Though Not Mentioned.—Where plaintiff had joined with the committee of her insane brother to have a deed of the brother set aside for the express purpose of protecting her interest in the property and had alleged in the petition in that action that she was induced to join in the execution of the deed by duress, a judgment dismissing the petition under direction of the Court of Appeals was an adjudication against plaintiff's claim of duress though that issue was not discussed in the court's opinion.

7. Judgment—Not all Parties to Former Judgment Need be Parties to Subsequent Action.—The rule that to constitute an estoppel the first judgment must be upon the merits, must be on the same subject matter presented by the pleadings, and must be between the same parties as adverse litigants, does not mean that all the parties to the first proceeding must likewise be parties to the subsequent one, but it is sufficient if the parties to the subsequent suit had been adverse parties in the prior suit and the merits constituting the estoppel had been presented by the pleadings between those same parties in the prior suit.

EMMETT M. DICKSON, E. C. O'REAR and W. G. DEARING for appellant.

VIRGIL CHAPMAN, W. H. WHITLEY and ROBT. C. TALBOTT for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On April 20, 1888, Henry Clay, who resided in Bourbon county, executed his will. Within a short time thereafter he died the owner of a large body of land in that county and on July 7, 1890, his will was probated. In it he devised his land to his three children jointly, the appellant, Lettia Clay, George Clay and Joseph H. Clay, and as to the shares of his two children, George and Letitia, he provided "in the event of the death of either George or Letitia Clay without children each to inherit their lands of the other so far as received from me." The land so devised consisted of about nine hundred acres and after the probate of the will a suit was brought for its partition among the three devisees. The commissioners allotted lot No. 1, containing 293 acres 3 roods

and 32 poles to appellant, Letitia Clay, and lot No. 2, containing 296 acres 1 rood and 32 poles to George Clay, and lot No. 3, containing 360 acres to Joseph H. Clay. Appellant was dissatisfied with the lot apportioned to her and preferred the one given to her brother George Clay, and on October 30, 1891, they executed deeds to each other by which she conveyed absolutely and with covenant of warranty lot No. 1 to her brother, George Clay, and he on the same day and in the same manner conveyed to her lot No. 2.

On December 3, 1912, the same two parties exchanged deeds from the one to the other in each of which the above quoted provision of the will of Henry Clay was recited and reference made to the deeds of October 30, 1891, and they further contained this recital: "WHEREAS, it is desired by each of the said parties, namely: George Clay and Letitia Clay, to own in fee simple and without restriction the lands devised to each by the will of their father, Henry Clay, Now, therefore," etc. Those recitations and reference, were followed by a regular quitclaim deed of conveyance of all the interest which the one had or claimed to own in the devised land of the other with the expressed purpose of relieving each of their portions of the executory devise imposed by their father's will in favor of the other, so that each might hold their respective portions by absolute and unfettered title.

On March 1, 1913, George Clay sold for a valuable consideration his tract to appellee and defendant below, Brooks Clay. At the latter's request appellant and plaintiff below, Letitia Clay, joined in the deed of conveyance made by George Clay to his vendee, the defendant, Brooks Clay. The obligation of plaintiff in that deed is thus recited therein: "The first party, Letitia Clay, has heretofore, by the deeds above referred to, conveyed to the first party, George Clay, all right or title to which she might have succeeded in said real estate under the will of her father, Henry Clay, but for greater certainty and definitenes she is made a party hereto, and united herein, to sell, assign, transfer, quitclaim and convey to second party, his heirs and assigns, all right, title or interest owned by her, or to which she might ever succeed under the will of her said father, Henry Clay. And to this extent the said first party, Letitia Clay, warrants specially, and not generally, the title herein conveyed."

In August, 1913, George Clay, upon inquisition, was adjudged a person of unsound mind and plaintiff was

appointed his committee, but she soon thereafter resigned and H. Clay Howard was appointed as her successor and he and plaintiff in this case filed an equity action in the Bourbon circuit court on October 13, 1914, seeking to set aside the deed of March 1, 1913, to defendant, Brooks Clay, upon the ground (as to George Clay) that he at the time of executing it and long prior thereto did not possess mental capacity to understand the nature and purpose of the deed and that he was mentally incapable of doing so, and that the consideration paid by defendant, Brooks Clay, was greatly inadequate. It was further alleged in that petition as a cause of action in favor of the plaintiff in this case that her brother, George Clay, had threatened her with personal violence, "and that she feared personal violence at his hands if she opposed him in any matter or refused to comply with any of his demands, . . . and that by reason of her fears of such violence at the hands of her said brother she was unable to refuse to unite with him in such conveyance (the one to Brooks) when he demanded that she should execute the same," and for that reason, and the further one that to avoid exciting and irritating her brother, George, and to prevent an aggravation of his malady, she consented to and did join in the deed attacked in that suit.

Appropriate pleadings made the issues, and upon extensive preparation the court set aside the deed of March 1, 1913, from which the defendant therein, Brooks Clay, who is also the present defendant, prosecuted an appeal to this court, and the judgment was reversed on February 26, 1918, in the case of Clay v. Clay's Committee, et al., reported in 179 Ky. 494, and the cause was "remanded with directions to dismiss the petition." The mandate was filed and a judgment entered dismissing the petition against both plaintiffs as directed by this court in its opinion. At that time George Clay was alive and lived until September 28, 1919, when he died unmarried and without children.

On October 29, thereafter, plaintiff brought this equity action against the defendant, Brooks Clay, seeking to recover the same tract of land by virtue of her defeasible remainder interest created in it by the will of her father upon the death of her brother, George Clay, without children or other remote descendants, and for cause she alleged that her brother, George Clay, by his threats, force and duress compelled her to execute the

deed to him on December 3, 1912. The same was alleged as to the deed of March 1, 1913, and that both of them so far as she was concerned were without consideration. By an amendment she alleged that all of the deeds she executed to her brother, George, as well as the one in which she joined with him to defendant, Brooks Clay, were each void because at the time she executed them she possessed no conveyable interest and she further alleged that her brother was of unsound mind on October 30, 1891, although he was made executor of his father's will and carried out its provisions.

The answer, as amended, in addition to a traverse alleged affirmatively as defenses, (1) the execution by plaintiff of the various deeds hereinbefore recited; (2) pleaded the statute of limitation in bar of plaintiff's right to contest either of them, and (3) pleaded the judgment and proceedings in the case of Clay v. Clay's Committee, in bar of the action. The demurrer filed by plaintiff to the answer as amended was overruled and she declining to plead further, her petition was dismissed, from which judgment she prosecutes this appeal. The parties have assumed and proceeded on the theory that the quoted provision from the will of Henry Clay by which a defeasance was created in the respective shares of his two children, George and Letitia, upon their death "without children," related to their deaths at any time and not to their dying without children before the death of the testator, and for the purpose of this case we will adopt that construction as the true one, which brings us to a consideration of the merits of the three affirmative defenses relied on.

It is vigorously insisted that the first one is unavailable, (a) because plaintiff executed the deeds under duress but it is nowhere alleged that defendant when he purchased the land in 1913 had knowledge of such duress except that affecting his own deed. It is nowhere alleged by plaintiff that he possessed any such knowledge with reference to the deeds executed to her brother in 1891 and in 1912; so that, the duress, if any, under which plaintiff executed those deeds could not operate to defeat defendant's rights against plaintiff growing out of their execution by her. It is next insisted in avoidance of the same defense (b) that the various deeds of plaintiff were without consideration, but to this we can not agree, since the relinquishment by her brother George of all his future interest, either vested or contingent, in her

tract of land was an abundant consideration for her doing likewise by her deed with reference to his share of his father's land. That proposition is so clear that we deem it unnecessary to fortify it with cases or authorities, and it is especially applicable to the two deeds of 1891 and 1912. Finally, in avoidance of that defense, it is insisted (c) that plaintiff possessed no transmissible interest in her brother's tract of land which she could legally convey until after his death, and for that reason her respective deeds were void. Were we to regard her future interest in her brother's land during his life as purely a contingent one, then under this court's opinion in the case of Fulton v. Teager, 183 Ky. 381, it was one which she could convey and transmit to her vendee, under the provisions of section 2341 of the statutes, all of the interest which she obtained therein under her father's will, and which would become absolute in her vendee upon the happening of the contingency when she would become vested with that portion of his estate. The doctrine of that case was referred to and approved in the later one of Roy v. West, 194 Ky. 96. In the latter case, however, it is pointed out that an interest created by an executory devise, which is the character of the one possessed by plaintiff in the lands of her brother under her father's will, was not in its true sense a contingent interest but was a vested defeasible one subject to be defeated by the double contingency of her surviving her brother and his leaving no children surviving him. But, whatever construction we might place upon the language of the will of Henry Clay, under the opinions referred to and others cited therein, and under the section of the statute, *supra,* plaintiff possessed an interest in her brother's land which she could validly convey and this insistence (c) must be denied. It results, therefore, that defense (1) was and is a complete one and the court properly overruled the demurrer filed to it.

Defense (2), relying on limitations, is sought to be avoided by invoking the provisions of section 2544 of the statutes saying: "In all cases where the doing of an act necessary to save any right or benefit is restrained or suspended by injunction or other lawful restraint, vacancy in office, absence of an officer, or his refusal to act, the time covered by the injunction, restraint, vacancy, absence, or refusal to act, shall not be estimated in the application of any statute of limitations." Although learned counsel laboriously strives to convince us of the

applicability of that section to the facts of this case, we must confess our inability to agree therewith. There existed here no suspension of plaintiff's right by any injunction, or other lawful restraint; nor was she prevented from proceeding by any "vacancy in office" or the absence of any officer "or his refusal to act." The "restraint" which she claims existed was the pendency of her own suit in connection with the committee of her brother to obtain the same relief which she is now seeking; and it is so apparent to us that the saving statute relied on is not applicable here that we deem it unnecessary to further discuss the question. That being true, the demurrer admitted that more than five years had elapsed since the execution of the deed of December 1, 1913, by plaintiff and her brother to defendant, and since the execution of her deed to her brother on December 3, 1912, and more than twenty-five years had elapsed since the execution of her deed in 1891. She necessarily had knowledge of the alleged duress, or of any fraud perpetrated on her at the respective dates of the execution of those deeds, and the limitation of five years to obtain relief on the ground of fraud or mistake contained in section 2515 of the statutes must apply, which conclusion renders effectual defendant's second affirmative defense.

Defense (3) must also be sustained. It is urged against its availability that this court in its opinion in the case referred to did not discuss or mention the point now under consideration, but directed a reversal of the judgment upon another ground involved in that case. While that may be true it by no means results that the point was not adjudicated. It was presented by the pleadings and it was for the very purpose of obtaining the *same* relief that plaintiff here joined her brother's committee as a plaintiff in that case, and that was the only personal relief which she sought therein. Notwithstanding the point was not expressly mentioned in that opinion it directed the petition to be dismissed, not merely only as to George Clay, but also as to all the plaintiffs which included Letitia Clay, and that order necessarily adjudged that her claim in that case was without merit.

It is not essential to the creation of an adjudicata estoppel that the matter which the litigant is thereafter prevented from relitigating should be expressly discussed or settled in the determination of the first case

from which the estoppel arose. It is only necessary that the matter should be presented by the pleadings in that case between the same parties, and it will be deemed as adjudicated between the parties when it is not mentioned as effectually as if it had been expressly determined. In the case of Davis v. McCorkle, 14 Bush 746, the point relied on as an estoppel by judgment was not expressly mentioned in the former opinion, though presented by the pleadings, and the court said "That it was not discussed in the opinion then delivered, or in terms decided, is true, but in our opinion it was directly in issue and was actually, though not expressly, decided;" and again, "And although each of these points was not discussed and settled expressly in that opinion, yet each must be considered as conclusively settled as if they had been made the subject of express adjudication," which last excerpt was taken from the case of Meredith v. Kennedy, Litt. Sel. Cases, 516. We could recite and insert a list of cases from this court covering more than a page of this opinion supporting the doctrine of the McCorkle case, but it would serve no useful purpose, since the principle is elementary and of universal application. It is true that all the cases and text writers say that to constitute an estoppel of this nature the first judgment must be upon the merits. It also must be presented by the pleadings, and must be between the same parties as adverse litigants. But the latter statement does not mean that all the parties to the first proceeding must likewise be parties to the subsequent one in which the estoppel is relied on. By the use of the term within that principle "between the same parties" it is meant that the same parties in the second suit wherein the estoppel is interposed must likewise have been adverse parties in the prior suit and the matters constituting the estoppel must be presented by the pleadings between those same parties in the prior suit, and when that appears the requirement that both actions must be "between the same parties" is completely met. Freeman on Judgments, vol. 1, sections 252-3, 256 and 307. Some of the numerous cases from this court supporting the above statement are: Moran v. Vicroy, 117 Ky. 195; Klenke v. Noonan, 118 Ky. 436; Elswick v. Matney, 132 Ky. 294; Vincent v. Blanton, 134 Ky. 590; Campbell v. Mims, 161 Ky. 530, and Castleman v. Buckner, 180 Ky. 350.

Notwithstanding the uniform condition of the law upon the subject it is said in avoidance thereof in brief

of counsel that "the Court of Appeals (in the case of Clay v. Clay's Committee) only adjudicated as to the capacity and fraud of the one, and failed to adjudicate as to the fear and duress of the other. They are separate and distinct causes, but joined in the same petition to get full and complete relief," which statement is exactly the reason why plaintiff's present alleged cause of action was adjudicated in that case. She alleged and relied on it in that case "to get complete relief." She got none because the court by necessary implication adjudged that she was entitled to none. She can not now be allowed to relitigate that question. Therefore, without further elaboration, we unhesitatingly conclude that the estoppel relied on constituted a complete defense, and the court did not err in overruling the demurrer to that paragraph of the answer.

Wherefore, the judgment is affirmed.