

# NUMBER 13-22-00469-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

GLENN LINDSEY,                                                         Appellant,

v.

CYNTHIA LINDSEY,                                                       Appellee.

## ON APPEAL FROM THE 454TH DISTRICT COURT
## OF MEDINA COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Tijerina and Peña
Memorandum Opinion by Justice Tijerina**

Appellant Glenn Lindsey appeals the trial court's final divorce decree dissolving his marriage with appellee Cynthia Lindsey. By twelve issues, which we have reorganized, appellant contends that (1) the evidence is legally and factually insufficient to support the trial court's findings that (a) the couple moved to Texas in 1996; (b) appellee

contributed to appellant's separate property; and (c) the couple formed a business partnership (issues one through three); and (2) the trial court reversibly erred by (a) "applying Hawaiian law in contravention of the public policy doctrine" (issue four); (b) simultaneously applying Texas law to find that appellant and appellee were in an informal marriage and Hawaiian law to find that the couple was in a premarital economic partnership (PEP) (issues five and six); (c) "altering the division of assets in the Hawaiian decree" (issue seven); (d) finding that a PEP existed (issue eight); (e) "excluding the testimony of [appellant's] expert on Hawaiian matrimonial law" (issue nine); (f) "dividing corporate assets of [appellant's corporation Glenn Lindsey, Inc. (GLI)] and making other rulings interfering with GLI's substantive rights" (issue ten); (g) "failing to make requested findings and conclusions despite [appellant's] proper request" (issue eleven); and (h) "divesting [appellant] of" two tracts of land (Tract 1 and Tract 2) and "awarding" another tract (Tract 3) "as though it were community property" (issue twelve). We affirm.[1]

## I. BACKGROUND

Appellant and appellee were married in 1975 in Hawaiʻi and divorced in 1983. The Hawaiian 1983 divorce decree incorporated two agreements: the Agreement in Contemplation of Divorce (AICD) and "the Agreement." The Agreement states in pertinent part, "All property acquired hereinafter by either Party shall be the sole and separate property of that Party, free and clear of any claim by the other Party and his or her heirs and assigns." In the AICD, the parties agreed that the trial court should award to appellant

---

[1] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

"as his sole and separate property . . . the business or businesses of [appellant] and all assets, income, or other benefits of or from same." According to appellant, at the time, he "owned a 49% stake in a company known as A&G Brothers, Inc. (A&G) and a sole proprietorship known as Glenn Lindsey Construction." The couple continued to live together in Hawaiʻi after the 1983 divorce.

Appellant claims in his brief that in 1986, he "received 100% of all assets (including equipment, bank accounts, and a building known as 'B-1'[)] from a lawsuit which dissolved A&G." Appellant states in his brief that he used some of the assets acquired from that lawsuit to form GLI that same year. Appellant states that he "owned 100% of the shares of GLI and acted as President and Vice President." Appellant claims that, although appellee served as GLI's secretary and treasurer, she did not "contribute any assets or funds to GLI, nor did she have any ownership stake in the company." At trial, appellee testified that she contributed funds to GLI and acquired loans on behalf of GLI that she helped to repay. In 1986 and 1987, appellant acquired two buildings, B-2 and B-3, which generated rental income and were adjacent to B-1. During this time, appellant also owned Glenn Lindsey Trucking and Glenn Lindsey Construction; and GLI owned Glenn Lindsey Hardware, which operated a True Value store.

According to appellant, appellee was the bookkeeper for his businesses and worked at the True Value store for some time. Appellant states that appellee sometimes received W-2s for her services to the businesses and claimed that "generally she was able to compensate herself for bookkeeping services by writing checks out of the business accounts which she deposited into her personal accounts." Appellee claimed at

3

trial that she and appellant shared ownership of the True Value business.

In 1998, appellant purchased Tract 1, which is a 209.52-acre property located in Quihi, Texas. Appellant claimed he bought Tract 1 with money from a USAA money market account which he funded with proceeds from selling property awarded to him in the 1983 divorce. Also in 1998, appellant purchased several properties in Hawaiʻi known as "the Milolii lot" and "the Lono Kono Utility Easement" (the Kono property).

In November 1999, appellant bought Tract 2, which is a 127.348-acre property adjacent to Tract 1, which appellant claims he bought with funds from the same USAA account he used to purchase Tract 1. In 2000, construction of a house on appellant's Texas property was completed, and appellant and appellee lived together in the house for around twenty years. In 2019, appellee filed for a second divorce in Texas, giving rise to the proceedings underlying this appeal.

The trial court held an agreed upon bifurcated trial: in the first phase, the trial court addressed whether the couple was married. Appellee requested that the trial court apply Texas law to find that the couple was informally married. Appellant asked the trial court to take judicial notice that Hawaiʻi law does not recognize informal marriage. After the first phase of trial, the trial court found that the couple moved to Texas in 1996. The trial court also found that when they lived in Hawaiʻi, the couple had a PEP. Appellant argued against the existence of a PEP, and he offered an expert witness on PEPs, whose testimony the trial court excluded.

After the second phase of the trial, the trial court divided the couple's assets. In relevant part, the trial court awarded Tracts 1 and 2 to appellee, and it awarded Tract 3,

4

a tract of land purchased in Texas after the purchase of Tracts 1 and 2, the Milolii lot, the Kono property, GLI, and GLI's assets to appellant. This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

By his first through third issues, appellant contends that the evidence is legally and factually insufficient to support the trial court's findings that: (1) the couple moved to Texas in 1996; (2) appellee "made contributions to [appellant's] separate property during both their premarital cohabitation and subsequent marriage,"; (3) while the couple lived in Texas, appellee "contributed financial resources as well as her energy and efforts to acquiring property and investments [appellee] and [appellant] maintained in their joint and individual names as husband and wife"; and (4) the couple entered into a partnership.

By his twelfth issue, which we address together with his first three issues, appellant contends that that "[t]he trial court committed reversible error in divesting [him] of Tract 1 and Tract 2, and awarding Tract 3 as though it were community property." Specifically, appellant claims that he acquired Tracts 1 and 2 in his sole name prior to entering an informal marriage with appellee and that, although Tract 3 was purchased after the date appellant claims the marriage occurred, he deeded Tract 3 to appellee's son, who then deeded it back to appellant as his sole property.

## A.    Standard of Review

"[I]n family law cases, the abuse of discretion standard of review overlaps with the traditional sufficiency standard of review; thus, legal and factual insufficiency are not independent reversible grounds of error but are relevant factors in assessing whether the trial court abused its discretion." *Kazmi v. Kazmi*, No. 03-22-00330-CV, ___ S.W.3d ___,

5

2023 WL 7932473, at \*3 (Tex. App.—Austin Nov. 17, 2023, no pet.); *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.). We determine if the trial court abused its discretion by exploring if: (1) the trial court had sufficient evidence upon which to exercise its discretion, and (2) the trial court erred in its application of that discretion. *Boyd*, 131 S.W.3d at 611. "The applicable sufficiency review comes into play with regard to the first question." *Id.* First, we focus on "the sufficiency of the evidence, which we answer using traditional sufficiency standards of review." *Kazmi*, 2023 WL 7932473, at \*3. We "then proceed[] to determine whether, based on the evidence, the trial court made a reasonable decision, that is, that the court's decision was neither arbitrary nor unreasonable." *Zeifman v. Michels*, 212 S.W.3d 582, 588 (Tex. App.—Austin 2006, pet. denied).

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We review the evidence in the light most favorable to the verdict, crediting any favorable evidence if a reasonable factfinder could and disregarding any contrary evidence unless a reasonable factfinder could not. *Id.* at 821–22, 827.

Evidence is legally insufficient when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *see City*

6

*of Keller*, 168 S.W.3d at 810. There is less than a scintilla of evidence when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

In reviewing a factual-sufficiency challenge to a finding on an issue on which the appellant did not have the burden of proof, we will set aside the verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). "When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). In either case, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding in our factual sufficiency review. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We must weigh all the evidence, not just that evidence which supports the verdict. *Dow Chem. Co.*, 46 S.W.3d at 242; *Mar. Overseas Corp.*, 971 S.W.2d at 406–07. If we determine that the evidence is factually insufficient to support a finding, we must "detail the evidence relevant to the issue" and "state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict." *Dow Chem. Co.*, 46 S.W.3d at 242.

Whether reviewing the legal or factual sufficiency of the evidence, the factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819. The amount of evidence necessary to affirm is far less than the amount necessary to reverse a judgment. *GTE Mobilnet of S. Tex. Ltd. P'ship v.*

*Pascouet*, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). We must show deference to the factfinder's resolution of conflicts in the evidence, and we must presume that it resolved all conflicts in favor of the verdict. *City of Keller*, 168 S.W.3d at 820–21. We may not substitute our own judgment for that of the factfinder, even if we would reach a different answer based on the evidence. *GTE Mobilnet of S. Tex. Ltd. P'ship*, 61 S.W.3d at 616 (citing *Mar. Overseas Corp.*, 971 S.W.2d at 407).

## B.    Finding that the Couple Moved to Texas in 1996

By his first issue, appellant contends the trial court's Finding of Fact No. 21, stating that the couple moved to Texas in 1996, is not supported by legally and factually sufficient evidence because they did not reside in Texas in 1996.[2] By his twelfth issue, appellant contends that the trial court improperly considered Tracts 1, 2, and 3 in its division of the community estate because he purchased Tracts 1 and 2 prior to the informal marriage, which he claims occurred in 2000, and appellee's son gave him Tract 3.

In his brief, appellant has not explained how the trial court's alleged inaccurate finding that the couple moved to Texas in 1996 is vital or affects the judgment in any way. *See* TEX. R. APP. P. 38.1(i) (providing that an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record), 44.1(a) ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals.").

---

[2] Appellant claims that the couple moved to Texas together and were informally married in 2000.

8

Appellant suggests that the date the couple moved to Texas affects when the couple became informally married; but he does not explain why the exact date of the informal marriage affects the judgment, and we are therefore left to guess the reason. "An appellate court has no duty—or even right—to perform an independent review of the record and applicable law to determine whether there was error." *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.). Doing so would cause us to run afoul of the ideal that "we are to be neutral and unbiased adjudicators of the dispute before us." *Plummer v. Reeves*, 93 S.W.3d 930, 931 (Tex. App.—Amarillo 2003, pet. denied). We are precluded from becoming an advocate for appellant. *See id.* Without further explanation from appellant, we are unable to reverse this judgment on the basis that the evidence is insufficient to support a finding that the couple moved to Texas in 1996 as appellant has not shown that any error would be reversible. *See* TEX. R. APP. P. 38.1(i), 44.1(a); *Kazmi*, 2023 WL 7932473, at *3.[3]

In his brief, appellant hints that because the couple was not informally married until 2000, Tracts 1 and 2 were his separate property as they were acquired prior to that time. However, pursuant to Hawaiian law, a trial court may consider all property acquired during a PEP in its division of the couple's marital estate. *See Collins v. Wassell*, 323 P.3d 1216, 1226 (Haw. 2014). Here, the trial court concluded that appellant and appellee had a PEP prior to entering an informal marriage in Texas, a finding that we conclude below was not

---

[3] Appellee testified that she moved to Texas with appellant in November 1998. Appellant testified that he did not remember when the couple officially moved to Texas. Appellee's trial counsel asked appellant to refer to his deposition testimony, wherein appellant stated the couple moved to Texas together in 1997 or 1998, although he was not "certain" which year. Nonetheless, at trial, appellant admitted that, during his deposition, he stated that the couple had resided together continuously since 1983.

erroneous. Thus, even assuming, without deciding, that Tracts 1 and 2 were acquired prior to the informal marriage as claimed by appellant, the trial court could have properly considered that property in its division of the couple's estate pursuant to Hawaiian law. *See id.*; *see also Hamilton v. Hamilton*, 378 P.3d 901, 915 (Haw. 2016) (concluding that the trial court correctly considered the couple's cohabitation outside of Hawaiʻi when it found that a PEP existed). Accordingly, we are unable to conclude that the trial court abused its discretion in its division of the couple's property. See *Kazmi*, 2023 WL 7932473, at *3. We overrule appellant's first issue.

## C.     Tract 3

By his twelfth issue, appellant complains that the trial court improperly considered Tract 3 as community property when it divided the couple's estate. Though it awarded Tract 3 to appellant, there is nothing in the record showing that the trial court determined that Tract 3 was community property. Nonetheless, appellant does not provide any argument that the award of Tract 3 made the trial court's division of the community estate so unjust and unfair as to constitute an abuse of discretion. *See* TEX. R. APP. P. 38.1(i); *Reisler v. Reisler*, 439 S.W.3d 615, 620–21 (Tex. App.—Dallas 2014, no pet.) ("The party complaining of the division of the community estate has the burden of showing from the evidence in the record that the trial court's division of the community estate was so unjust and unfair as to constitute an abuse of discretion."). We overrule appellant's twelfth issue.

## D.     Appellee's Contributions to Appellant's Separate Property

By his second issue, appellant argues that the evidence is legally and factually insufficient to support the trial court's Finding of Fact No. 24, stating that appellee "made

contributions to [appellant's] separate property during both their premarital cohabitation and subsequent marriage" and its Finding of Fact No. 29 stating that "[w]hile [appellant and appellee] lived in Texas, [appellee] contributed financial resources as well as her energy and efforts to acquiring property and investments she and [appellant] maintain in their joint and individual names as husband and wife."[4]

The trial court did not make any findings of fact or conclusions of law regarding which property, if any, constituted separate property in this case. Therefore, it is unclear which of appellant's separate property the trial court determined appellee "made contributions to . . . during both their premarital cohabitation and subsequent marriage." Appellant argues that there is no evidence that appellee made contributions to acquire "the Ranch [Tracts 1 and 2], the formation of GLI, the acquisition of assets by GLI, or any other separate property of" appellant. However, the trial court did not find that Tracts 1 and 2, GLI, or GLI's assets were appellant's separate property. Appellant does not provide legal analysis of his assertion with citation to pertinent authority explaining how this finding affected the judgment or the distribution of the couple's assets in the division of their property or how he proved that these assets were his separate property. *See* TEX. R. APP. P. 38.1(i), 44.1(a); *see also Pearson v. Fillingim*, 332 S.W.3d 361, 364 (Tex. 2011) (providing that "[a]ll property acquired during a marriage is presumed to be community property, and" that the spouse claiming separate property has the burden to prove so).

---

[4] Appellant also argues as follows: "As the party alleging contributions, [Appellee] bore the burden of tracing, by clear and convincing evidence, any such contributions to [appellant's] separate property. [Appellee] failed to plead or attempt to demonstrate any reimbursement claims at trial." However, the trial court did not determine that any of the complained-of property is either appellant's separate property or community property, and appellant does not further explain how these findings affected the judgment or the division of property. *See* TEX. R. APP. P. 38.1(i).

11

Without further guidance from appellant, we are unable to properly address this issue. Accordingly, we conclude that this issue is inadequately briefed, and we overrule it.[5] *See* TEX. R. APP. P. 38.1(i).

## E.    Business Partnership

By his third issue, appellant contends that the evidence is legally and factually insufficient to support the trial court's finding that the couple entered into a business partnership. Specifically, appellant argues that GLI's articles of incorporation negate a finding that the couple intended to enter a business partnership. Appellant states:

> While [appellee] kept the books for GLI and [appellant's] other businesses, she did so in her capacity as a treasurer and secretary and was compensated for her work. There was no evidence that [appellee] contributed any funds or assets to [appellant's] businesses, nor did she use any of her personal funds or assets to satisfy corporate liabilities or obligations. There was no evidence that [appellant] acquired any assets in the name of a partnership or with partnership assets. The evidence conclusively demonstrated that the reason [appellant] acquired Tract 1 and Tract 2 in Texas was for a personal, not business, purpose.

"Under the common law, the Court recognized that a partnership or joint enterprise 'presupposes an agreement to that end,' which could be either express or implied." *Ingram v. Deere*, 288 S.W.3d 886, 893–94 (Tex. 2009). Section 152.052 of the Texas Business Code sets out the statutory scheme for determining whether a partnership is created. TEX. BUS. ORGS. CODE ANN. § 152.052. The factors we may consider are as follows: (1) "receipt or right to receive a share of profits of the business"; (2) "expression

---

[5] We note that GLI was awarded solely to appellant, and he does not provide any argument supporting a conclusion that Finding of Fact 24, even if erroneous, affected him. *See* TEX. R. APP. P. 38.1(i). Moreover, the trial court also found that using their joint names, appellant and appellee formed GLI in 1986, borrowed money for GLI operations, and guaranteed loans in the name of GLI—all findings of fact not challenged by appellant.

of intent to be partners in the business"; (3) "participation or right to participate in control of the business"; (4) "agreement to share" the losses of the business or liability for claims by third parties against the business; and (5) "agreement to contribute to or contributing money or property to the business." *Id.* § 152.052(a).

Appellant states that "[n]onmarital, conjugal cohabitation does not satisfy the requirements for partnership in Texas because the central feature of the association is for personal, not business purposes." There is nothing in the trial court's findings of fact or judgment indicating that it found that a business partnership was created merely because the couple engaged in conjugal cohabitation. Thus, this argument is meritless.

Next, appellant argues, "Absent some evidence that assets were acquired in the name of a partnership or using joint or partnership assets would negate any claim of a property interest by the non-acquiring party under the rules of partnership, and under the statute of frauds." This argument is not clearly stated, and we are unable to construe its meaning. *See* TEX. R. APP. P. 38.1(i). Finally, appellant states:

> There was no evidence that Glenn acquired any property in Texas for a business purpose. There was no evidence that Glenn intended to form a business with Cynthia, nor that Cynthia intended to form a business with Glenn. She did not present evidence that she contributed any assets or funds to Glenn's businesses. As such, any findings of fact and conclusions of law to the contrary lack legal and factual sufficiency.

We find that there is some evidence that the couple formed a business together. First, in his brief, appellant acknowledges that he and appellee "did acquire a few properties for investment purposes." Additionally, appellee testified that she and appellant purchased the True Value franchise together using joint funds in 1988, thus negating appellant's claim that appellee never "contributed any funds or assets to [appellant's]

13

businesses." Appellee stated that in 1995, she and appellant obtained a loan and purchased some land where they "create[d] a condominium." Next, appellee testified that in 1995, she guaranteed a loan for $123,434.93 so that appellant could purchase materials that he "needed for a subdivision he was building in Hilo," Hawai'i. Appellee stated that she was aware that she was "personally liable for the loan." Appellee explained that she signed the loan documents as a guarantor and a maker on GLI's obligations "[b]ecause it was our company. We had formed it in 1986 and we tried to keep it functioning by supplementing income from one entity to another." Appellee testified that she and appellant agreed that the loans she obtained were for their property and "[t]hat [they] were working together to build for [their] life together forever." Appellee testified that the loans that she "took and borrowed" with appellant were "renewed, paid off, and otherwise satisfied." This constitutes some evidence that appellee used "her personal funds or assets to satisfy corporate liabilities or obligations." Appellee responded affirmatively when asked if she devoted labor, money, and earnings to the acquisition of property. Appellee stated that in 1998, the couple operated several businesses together. According to appellee, Glenn Lindsey Construction used equipment that the couple owned together for its operation.

Additionally, evidence was presented that appellant and appellee listed business profits and losses together in their joint tax forms in 1998 related to several business endeavors. Specifically, with their federal income tax return, the couple filed a "Profit or Loss From Farming" form indicating that they operated a "CATTLE RANCH" on their Texas property. The couple listed profits, depreciation, and losses they incurred due to

14

this business. In 1999, the couple again filed a "Profit or Loss From Farming" form with their federal income tax return stating that they had earned income or incurred costs for "Sales of livestock, produce, grains, or other products you raised." Therefore, contrary to appellant's claim, there is evidence that appellant and appellee intended to conduct business on the Texas property and that the couple did in fact do so.

The 1998 federal tax return shows that the couple filed a supplemental income tax form and reported that they had either received income or had a loss from rental real estate and royalties from several rental properties. The couple further indicated that they had received "Income or Loss From Partnerships and S Corporations" from GLI in the amount of $134,616.

In their 1998 Hawaiʻi state income tax return, the couple signed a form indicating that they had sold business property for $123,556. Part 1 of the form instructs that the form is used for "Sales or Exchanges of Property Used in a Trade or Business," among other things. This form indicates that it can be filed by any individual, corporation, partnership, estate, or trust. This sale was also documented in their 1998 federal income taxes on a form entitled "Sales of *Business* Property" (emphasis added).

Direct evidence that the parties intended to form a business is not required to establish the existence of a partnership; "instead, 'expression of intent to form a partnership' is one factor to consider" in our analysis. *Nguyen v. Hoang*, 507 S.W.3d 360, 372 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *see* TEX. BUS. ORGS. CODE ANN. § 152.052. To analyze an expression of intent in forming a partnership, the "'courts should review the putative partners' speech, writings, and conduct.'" *Id.* (quoting *Ingram*, 288

15

S.W.3d at 899). Nonetheless, whether a partnership was created is determined by an examination of the totality of the circumstances and not by analyzing a sole factor. *Ingram*, 288 S.W.3d at 903–04.

Here, the totality of the circumstances shows that appellee guaranteed loans for GLI and other business endeavors and referred to GLI as belonging to both her and appellant. *See id.*; *see also* TEX. BUS. ORGS. CODE ANN. § 152.052(a)(2), (5) (setting out that appellate courts can consider factors such as an expression of intent to be partners in the business and agreeing to provide money to the business). Additionally, the couple's tax returns corroborate appellee's testimony that the couple engaged in business activities together and shows that the couple not only expended funds in joint business endeavors but also received income from those businesses. *See* TEX. BUS. ORGS. CODE ANN. § 152.052(a)(1), (4) (providing that receiving a share of the profits of a business and agreeing to share the losses or liability for third party claims against the business and to contribute money or property to the business are relevant factors that we consider in determining whether a business partnership exists).

Therefore, viewing the evidence in the light most favorable to the verdict, we conclude that the evidence is legally sufficient to support a finding that the couple intended to enter a business partnership. *See City of Keller*, 168 S.W.3d at 821–22, 827. Moreover, after examining the entire record, we cannot conclude that the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.[6] *See Cain*,

---

[6] The trial court could have also considered all property acquired prior to the marriage due to its finding that the couple had a PEP when it divided the estate, a finding that we conclude below was not erroneous. *See Collins v. Wassell*, 323 P.3d 1216, 1226 (Haw. 2014) (allowing a trial court to consider

709 S.W.2d at 176. We overrule appellant's third issue.[7]

### III.    APPLICATION OF HAWAI'I AND TEXAS LAW

By his fourth issue, appellant contends that the trial court reversibly erred by applying Hawaiian law to this case because Texas law applies. By his fifth issue, appellant contends that the trial court erred by simultaneously applying Texas and Hawai'i law. Specifically, appellant argues that the trial court recognized that under Texas law the couple had an informal marriage and then found that under Hawaiian law the Texas informal marriage established a PEP and the trial court "applied both simultaneously to find a PEP before 2000 and a marriage after 2000." Finally, by his sixth issue, appellant contends that it is against Texas public policy to apply Hawaiian law.

Appellant asked the trial court to apply Hawaiian law to this case. Specifically, he asked the trial court to take judicial notice that Hawai'i does not recognize an informal marriage. Appellee asked that, if the trial court applied Hawaiian law to the couple's conduct prior to moving to Texas, it should also consider Hawaiian law regarding PEPs because it is Hawai'i's alternative to informal marriage. After being presented with this

---

premarital contributions in dividing the marital estate when there has been a PEP finding and stating that "premarital circumstances may be relevant in distributing property upon divorce" if a PEP occurred); *see also Aiona-Agra v. Agra*, 272 P.3d 1240, *4 (Haw. Ct. App. 2012), *aff'd*, No. SCWC-30685, 2012 WL 3309639 (Haw. Aug. 10, 2012) (noting that the "family court did not clearly err in determining that Husband and Wife had a [PEP] that pre-dated the purchase of the residence" and thus concluding that "the residence could not be considered Husband's "contribution to Marital Partnership Property" where it was acquired during the partnership such that Husband was not entitled to repayment for his contribution").

[7] By what we construe as a sub-issue to appellant's third issue, appellant contends that the trial court improperly found that a partnership existed because the agreement was not in writing, in contravention of the statute of frauds. However, appellant does not cite any point in the voluminous record wherein he pleaded or preserved his argument based on the statute of frauds. *See* TEX. R. APP. P. 38.1(i); TEX. R. CIV. P. 94 (stating the statute of frauds is an affirmative defense that must be pleaded); *Bohls v. Brazelton*, 336 S.W.2d 208, 211 (Tex. App.—Austin 1960, writ ref'd n.r.e.) (noting that party waives statute of frauds defense if it fails to timely object on this basis).

request at trial, the trial court asked appellant, "I would still have to apply Hawaiian law to that prior to [their] moving to Texas?" Appellant's trial counsel replied, "Correct. . . . What we are asking is that court review our motion to take judicial notice and to the choice-of-law statute that is required to determine which state should control." The trial court asked, "When they come to Texas, and their behavior would rise to the point where I could say, okay, there's common-law marriage in Texas, that still only deals with Texas forward, as far as the common-law marriage aspect of it." Appellant's trial counsel responded, "Correct." The trial court then stated, "And it would be the [PEP] issues that would deal with their relationship, financial relationship in Hawaiʻi." Appellant's trial counsel said, "Correct. . . . Another reason we believe that Hawaiʻi law is applicable is all of the deeds that were entered into . . . those were all Hawaiian law deeds." The trial court obliged the parties' requests and took judicial notice of Hawaiian law.

We conclude that appellant has waived his complaint that the trial court's application of both Hawaiian and Texas law violated public policy because he requested that the trial court do exactly what he now complains was erroneous.[8] "A party cannot complain on appeal that the trial court took a specific action that the complaining party requested, a doctrine commonly referred to as 'the invited error' doctrine." *See Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 862 (Tex. 2005). The trial court explicitly stated that it would apply Hawaiian law to determine the division of property acquired prior to the couple's move to Texas and that it would apply Texas law to everything acquired after

---

[8] Moreover, appellant did not argue to the trial court that applying both sets of law would violate public policy as he himself requested for the trial court to do so. *See* TEX. R. APP. P. 33.1(a)(1)(A).

18

they moved to Texas. Instead of objecting, appellant assented to the trial court's assertions and otherwise agreed with its decision. *See id.* Accordingly, we overrule appellant's fourth, fifth, and sixth issues.[9]

## IV. ALTERATION OF DIVISION OF ASSETS PURSUANT TO HAWAIIAN DIVORCE DECREE

By his seventh issue, appellant contends that the trial court reversibly erred "in altering the division of assets in the Hawaiian decree." Specifically, appellant argues that the trial court failed to "honor the property division in the Hawaiian divorce decree under the Full Faith and Credit Clause." Appellant argues that appellee "has no claim to GLI or any other business formed by [appellant] in his sole name and with his assets after the AICD was signed, nor any of the income from his businesses." However, in this issue, appellant does not specify which property he is claiming the trial court improperly awarded to appellee. Specifically, appellant states:

> [Appellee's] request for property that had already been awarded to [appellant] was functionally "an impermissible collateral attack" on the Hawaiian decree. The trial court committed reversible error in awarding assets and business interests which were previously awarded in the Decree of Absolute Divorce. Such awards were beyond the trial court's limited enforcement and clarification powers under Section 9 of the Texas Family Code.

Appellant does not specify which property appellee requested that had already been awarded to him in the Hawaiian divorce decree. *See* TEX. R. APP. P. 38.1(i). Also, he does not list which assets and business interests he claims were previously awarded in the

---

[9] We note that a trial court has authority to apply the law applicable to each issue, even if the law is from different states, a process known as 'depecage.' *See Toyota Motor Co. v. Cook*, 581 S.W.3d 278, 283 & n.2 (Tex. App.—Beaumont 2019, no pet.) ("[T]he laws of a single state do not necessarily govern all substantive issues; accordingly, we consider each issue separately and apply the state law having the most significant relationship to the issue.") (citing *Fairmont Supply Co. v. Hooks Indus., Inc.*, 177 S.W.3d 529, 534 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)).

19

decree. The trial court awarded GLI to appellant, and we are not able to ascertain which other property appellant may be referencing in his brief.

We are left to connect the dots for appellant and then to guess which assets and business interests the trial court allegedly improperly awarded to appellee. We are not allowed to make such leaps on behalf of either party. Doing so would make us abandon our role as neutral and unbiased adjudicators of the dispute before us. *See Plummer*, 93 S.W.3d at 931. Without further explanation from appellant, we are without recourse to reverse the trial court's judgment on this basis under these circumstances. *See id.* We overrule appellant seventh issue.

## V.     PEP FINDING

By his eighth issue, appellant contends that the trial court's finding that a PEP existed is inconsistent with Hawaiian law. Under Hawaiian law, a PEP "occurs when, prior to their subsequent marriage, [two people] cohabit and apply their financial resources as well as their individual energies and efforts to and for the benefit of each other's person, assets, and liabilities." *Collins*, 323 P.3d at 1226–27 (noting that "the family court is allowed to consider premarital contributions of each spouse in dividing the marital estate when the couple formed an economic partnership and lived together prior to marriage").

Appellant makes several arguments as part of his eighth issue. First, appellant asserts that he and appellee "demonstrated intent for their then-existing and future-acquired property in the AICD, Agreement and Hawaiian decree," and that "[t]hose written agreements addressing intent for property rights disqualify the parties from PEP under Hawaiian law." The only statement made by appellant about this assertion is as follows:

"PEP analysis hinges on determining parties' intent in absence of a written agreement. *Beal v. Beal*, 577 1 P.2d 507, 510 (1978) ('[A] division of property accumulated during a period of cohabitation must be begun by inquiring into the intent of the parties, and if an intent can be found, it should control that property distribution.')."

Appellant does not explain how the mere existence of the AICD or the Agreement disqualify the couple from forming a PEP. In particular, he does not explain whether or how the written agreements reflected an intent for property rights which conflicted with the court's findings. Without further legal analysis and citation to appropriate authority, we are unable to determine that the trial court's PEP finding is erroneous on this basis. *See* TEX. R. APP. P. 38.1(i).

Next, appellant contends that the couple did not continuously cohabitate. Appellant states, "The evidence demonstrated that parties ceased cohabitating for a period of time in the late 90s before moving to Texas." However, as set out above, appellant and appellee both acknowledged that they lived together continuously once they reunited after the 1983 divorce. *See Hamilton*, 378 P.3d at 915 (2016) (taking into account, among other things, that the couple "resided and worked together in New Zealand, Massachusetts, and Hawai'i prior to their date of marriage, and financially supported each other during their cohabitation before marriage" to determine whether the couple had a PEP). Thus, this argument is without merit.

Finally, appellant claims that "[t]here is no authority to use a Texas informal marriage to satisfy the marriage requirement for a Hawaiian PEP." "A premarital economic partnership 'occurs when, prior to their subsequent marriage, a man and a woman cohabit

21

and apply their financial resources as well as their individual energies and efforts to and for the benefit of each other's person, assets, and liabilities.'" *Chen v. Hoeflinger*, 279 P.3d 11, 23–24 (Ct. App. 2012). The validity of a marriage is generally determined by the law of the place where it is celebrated. *Tex. Employers' Ins. Ass'n v. Borum*, 834 S.W.2d 395, 399 (Tex. App.—San Antonio 1992, writ denied). The trial court determined that the couple entered an informal marriage in Texas. *See id.* Informal marriages are recognized as valid in Texas. *Id.* Under Hawaiian law, a PEP is established if, among other things, a couple eventually enters a marriage. *Chen*, 279 P.3d at 23–24. Therefore, we conclude that because appellant and appellee entered a valid marriage in Texas, the first element of a PEP was satisfied. *See id.*

We overrule appellant's eighth issue.

## IV. EXCLUSION OF APPELLANT'S EXPERT WITNESS

By his ninth issue, appellant contends that the trial court erred in excluding the testimony of his proffered expert witness on Hawaiian matrimonial law, Samuel King. Specifically, appellant argues that the trial court should have allowed King to testify that appellant and appellee do not qualify for PEPs under Hawaiian law because "PEP requires continuous cohabitation that 'matures' into a legal marriage" and because "there were notable periods during which [the couple] lived apart, notably in the late 90s before they moved to Texas." Appellant asserts that "[n]othing under the Texas Rules of Evidence supported exclusion of [King's] testimony" and that the trial court excluded his testimony "simply because [King's] expert conclusions conflicted with [the trial court's] own finding of PEP (which was based on reading a few limited Hawaiian cases provided

22

by [appellee's] counsel)." Appellee responds that the trial court excluded King's testimony because an expert may not testify regarding pure questions of law and his testimony was unreliable.

At the hearing wherein appellant made an offer of proof regarding King's testimony, it was apparent that the main purpose of King's testimony was to opine on questions of pure law. Appellant's trial counsel told the trial court that King "would simply testify as to the law of Hawaiʻi," and during his offer of proof testimony, King did just that. He opined that pursuant to Hawaiian law, the couple did not form a PEP. Appellee argued that the trial court should exclude King's testimony on the basis that the testimony addressed "a matter of law for the Court to determine" and that "everything" that appellant offered from King's testimony "is a question of law and that is for the Court to decide." Appellee stated, "[appellant is] calling an expert on pure matters of law without any mixture of questions of fact and law. It's totally improper." Appellee further argued "to allow an expert at this time would essentially—reopen the trial on that issue." The trial court explained that it was able to "read a statute the same as [King could] and [it could] read the annotations and [could] read the case law on it." It then asked, "I mean, what is he going to tell me, is what I want to know. What is he going to come in as an expert? He can't tell me what I should do. He can't tell me that." Appellee further argued that King had not been present during the first phase of the trial, or "heard the facts of this case as this Court has over four days. So[,] for him to opine that the facts of this case don't support a PEP when he hasn't heard them, would be improper." The trial court then excluded King's testimony.

Appellant claims that there is no reason for the trial court to have excluded King's

23

testimony under the Texas Rules of Evidence. However, as set out above, appellee's arguments for exclusion of the testimony did not rely on rules of evidence. First, appellee argued that King's testimony would address pure questions of law, which is improper. *See Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 94 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("An expert . . . may not testify on pure questions of law."). Next, appellee argued that King was not present for the first phase of the trial and was therefore unable to opine on the facts of the case.

"Generally speaking, an appellant must attack all independent bases or grounds that fully support a complained-of ruling or judgment. If an appellant does not, then we must affirm the ruling or judgment." *D & M Marine, Inc. v. Turner*, 409 S.W.3d 693, 697 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (quoting *Britton v. Tex. Dep't of Crim. Just.*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.)); *see also City of Houston v. Waldhoff*, No. 01-22-00825-CV, 2023 WL 5110981, at *4 (Tex. App.— Houston [1st Dist.] Aug. 10, 2023, no pet.) (mem. op.) ("The reasoning is that if an independent ground fully supports the complained-of ruling or judgment, but the appellant assigns no error to that independent ground, then we must accept the validity of that unchallenged independent ground." (citing *Britton*, 95 S.W.3d at 681)). Here, appellant merely asserts that the trial court had no reason to exclude King's testimony; however, appellant does not specifically challenge either ground that the trial court may have determined made King's testimony inadmissible. Appellant neither states nor argues that the trial court erred in concluding that King's testimony would address pure questions of law or that King's testimony is inadmissible because he was not familiar with the facts.

24

We conclude that because appellant has not assigned any error to the stated grounds for the trial court's ruling, we must affirm the trial court's ruling. *See D & M Marine, Inc.*, 409 S.W.3d at 697; *see also City of Houston*, 2023 WL 5110981, at *4. We overrule appellant's ninth issue.

## VII.    DIVISION OF CORPORATE ASSETS

By his tenth issue, appellant contends by what we construe as three separate sub-issues that the trial court reversibly erred "by dividing" GLI's corporate assets "and making other rulings interfering with GLI's substantive rights." Appellant argues that, because the Hawaiian divorce decree awarded him GLI, appellant's interest in GLI was not subject to division. Appellant further argues that "GLI was not a party to the suit, and the trial court therefore lacked any authority over" it, and "[t]he trial court wrongfully encroached upon GLI's rights to pursue claims against [appellee] for embezzlement."

By his first sub-issue, appellant asserts that because "GLI was not formed during the marriage . . . any corporate interest is not community property" and, because he was awarded all businesses and all future-acquired assets as his sole and separate property under the Hawaiian decree his interest in GLI "was not subject to division." This is the extent of appellant's argument. Appellant does not provide legal analysis with citation to appropriate authority supporting such a conclusion. *See* TEX. R. APP. P. 38.1(i). Moreover, evidence was presented that GLI had been formed during the time that appellee and appellant were in a PEP. We overrule appellant's first sub-issue to his tenth issue.

By his second sub-issue, appellant claims that "[b]efore any specific assets can be reached by the divorce court, a corporation must be brought into the divorce as a party,"

25

and appellee had the "burden to plead (and prove) that GLI was" appellant's alter ego. Appellant then argues that the trial court awarded GLI as part of the couple's community property, considered GLI's "value when calculating the net award to each party," and "skewed the actual award" making the trial court's division not just and right. The authority cited by appellant applies to corporate property, and he acknowledges that under pertinent authority, "[t]he rights of a divorcing spouse can only attach to the interest in the entity." *See McKnight v. McKnight*, 543 SW 2d 863, 867 (Tex. 1976). Thus, appellant's only complaint is that the trial court erroneously awarded specific corporate property as part of the just and right division of community property. However, appellant does not list the property, other than GLI and its assets, which the trial court awarded to appellant, that was improperly awarded and thus, we are required to guess which other property, if any, the trial court allegedly erroneously awarded to appellee. We refuse to do so. Additionally, he does not explain how the trial court's division "skewed" the just and right division of the property. *See* Tex. R. App. P. 38.1(i).

Moreover, the trial court found that the couple had a PEP when GLI was formed. We have overruled appellant's issue challenging the PEP finding. Therefore, the trial court may have determined that pursuant to the PEP, GLI and its assets could be considered in the division of the estate. *See Collins*, 323 P.3d at 1226 (holding "that premarital contributions may be considered by the family court in dividing the mar[it]al estate when the parties entered into a [PEP] and cohabited prior to marriage"). We overrule appellant's second sub-issue.

Finally, appellant states:

26

It was undisputed that [appellee] removed over $500,000 from GLI without authority and put the funds in her personal account.[10] The trial court ruled that any liability under the purported promissory note [appellee] signed in favor of GLI would be assigned to [appellant]. The trial court had no authority to interfere in GLI's contractual rights.

It further skewed the net awards to each party because the half-a-million dollar liability under the note was not included in the trial court's spreadsheet award. It was reversible error for the trial court to usurp GLI's contractual rights under the promissory note signed by [appellee], and any other remedies GLI may wish to seek against [appellee] for embezzlement.

(Citation and record references omitted.) This is the extent of appellant's argument. *See* TEX. R. APP. P. 38.1(i). To sustain this issue, we would be required to conduct legal research and then apply such research to the facts of this case. We are not allowed to do this as neutral and unbiased adjudicators. *See Plummer*, 93 S.W.3d at 931.

Moreover, appellee presented evidence that she borrowed money from GLI during the marriage, and she signed a promissory note to pay the sum of $500,000 to GLI. Debt acquired by either spouse during a marriage is presumed to be community debt; therefore, the trial court properly presumed that appellee's debt is community debt. *See Viera v. Viera*, 331 S.W.3d 195, 204 (Tex. App.—El Paso 2011, no pet.) (providing that liabilities acquired during marriage are presumed to be community debt and such presumption can only be rebutted by clear and convincing evidence that the debt is separate). The trial court may consider the community debts and liabilities which are part of the community estate in making a just and right division of community property. *Walston v. Walston*, 971 S.W.2d 687, 693–94 (Tex. App.—Waco 1998, writ ref'd). Division of the

---

[10] According to appellant, shortly before filing for divorce, appellee "wrote herself two checks from GLI's account totaling $510,000," which she allegedly deposited into her bank account. Appellant claims that appellee signed a promissory note but has not made any payments. The evidence at trial shows that appellee borrowed the funds and signed a promissory note promising to repay them to GLI.

property is not required to be equal, and many factors may be considered when the trial court exercises its broad discretion to divide the marital property. *Reisler*, 439 S.W.3d at 620. Those factors include the nature of the marital property, the relative earning capacity and business opportunities of the parties, the parties' relative financial condition and obligations, the parties' relative fault in ending the marriage, the benefits the party without fault would have received had the marriage continued, and the probable need for future support. *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981); *Young v. Young*, 609 S.W.2d 758, 762 (Tex. 1980). The complaining party must show the trial court's division of the community estate was so unjust and unfair as to constitute an abuse of discretion. *Reisler*, 439 S.W.3d at 620.

Appellant has not addressed any of these factors to show that the trial court's division of the estate was so unjust and unfair to constitute an abuse of discretion. *See id.*; *see also* TEX. R. APP. P. 38.1(i). Nonetheless, concerning fault, appellee testified that appellant physically abused her during the marriage and committed adultery with his lover in the couple's marital bed. *Murff*, 615 S.W.2d at 699; *see also Simons v. Simons*, No. 11-21-00066-CV, 2023 WL 2415209, at *8 (Tex. App.—Eastland Mar. 9, 2023, no pet.) (mem. op.) (affirming the trial court's award of entire marital estate to wife because husband had treated her cruelly, was at fault in the break-up of the marriage, and had sexually assaulted his stepdaughter); *Christensen v. Christensen*, No. 01-16-00735-CV, 2018 WL 1747260, at *8 (Tex. App.—Houston [1st Dist.] Apr. 12, 2018, no pet.) (mem. op.) (concluding that a disproportionate division was not an abuse of discretion based on waste, fault in the break-up of the marriage, and multiple *Murff* factors); *Ohendalski v.*

*Ohendalski*, 203 S.W.3d 910, 915 (Tex. App.—Beaumont 2006, no pet.) (affirming the trial court's division of the community estate of 81/19% based on findings of adultery, cruelty, waste, and *Murff* factors). Even if the court's division of the marital estate was overall unequal, we are unable to conclude that the trial court abused its discretion by ordering appellant to pay appellee's debt to GLI in its division of the estate. *See Reisler*, 439 S.W.3d at 620. We overrule appellant's tenth issue.

## VIII. FAILURE TO MAKE ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

By his eleventh issue, appellant contends that he timely requested findings of fact and conclusions of law, timely filed a notice of past due findings of fact and conclusions of law, and "timely requested additional and amended findings and conclusions." Appellant argues that because the trial court failed to make these additional findings of fact and conclusions of law, we must presume harm. Appellee responds that the trial court properly declined appellant's request for an additional 150 findings of fact and conclusions of law because those requests were not confined to ultimate issues, and appellant "asked for numerous findings that are merely evidentiary."

Appellant lists the findings he requested from the trial court and states that the trial court's failure to issue such findings is presumptively harmful. Appellant cites *Sterquell v. Scott*, 140 S.W.3d 453 (Tex. App.—Amarillo 2004, no pet.), stating, "Absent evidence in the appellate record affirmatively showing no harm to plaintiff, failure of [a] trial court to file properly requested findings and conclusions on contested issues is presumed harmful." We have read the cited case, and the court of appeals makes no such statement within this opinion. *See id.* Thus, appellant has not cited any authority that a trial court's

29

failure to make additional findings of fact and conclusions of law constitutes presumed harm, and we find no such authority.

Nonetheless, "in a bench trial, the appellant may request additional findings on *omitted elements* to prevent them from being deemed on appeal." *Vickery v. Comm'n for Law. Discipline*, 5 S.W.3d 241, 254 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (citing TEX. R. CIV. P. 298) (emphasis added).

> However, before the failure to grant additional findings will impede an appellate court from presuming implied findings, the omission must be made manifest to the trial court. While Rule 298, unlike Rule 274, does not expressly require the party to distinctly point out the omission, we believe it is logically required. If the trial court is not specifically made aware of the missing element, the omission is presumed to be inadvertent.

*Id.* Moreover, "[a] trial court is not required to make additional findings of fact that are unsupported in the record, that are evidentiary, or that are contrary to other previous findings." *Rich v. Olah*, 274 S.W.3d 878, 886 (Tex. App.—Dallas 2008, no pet.).

> A trial court's refusal to make findings of fact does not require reversal if the record before the appellate court affirmatively shows that the complaining party suffered no harm. Error is harmful if it prevents an appellant from properly presenting a case to the appellate court. Generally, the controlling issue is whether the circumstances of the case would require the appellant to guess at the reasons for the trial court's decision.

*Nicholas v. Envtl. Sys. (Int'l) Ltd.*, 499 S.W.3d 888, 894 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). So long as the trial court made findings of fact that properly and succinctly relate to the ultimate findings of fact necessary to apprise the party of information adequate for the preparation of his appeal, additional findings are not necessary. *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d 373, 382 (Tex. App.—Dallas 2013, no pet.).

Appellant has not argued that the trial court's findings of fact omitted elements or that he made the trial court specifically aware of those omitted elements. Thus, we will presume that such omissions, if any, were inadvertent. *See Vickery*, 5 S.W.3d at 254. Moreover, appellant does not argue that he has been prevented from making his appellate arguments, that he had to guess as to the trial court's reasons for the verdict, that the trial court omitted elements that prevent him from forming his appellate issues, or that the trial court omitted ultimate findings. *See Nicholas*, 499 S.W.3d at 895. Therefore, even assuming the trial court failed to make required additional findings of fact, appellant has not shown he suffered any harm. *See id.*; TEX. R. APP. P. 44.1(a). We overrule appellant's eleventh issue.

## IX. CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Delivered and filed on the
20th day of June, 2024.

31