## Nolan v. Giacomini et al.
## Same v. James et al. (two cases).

(Decided June 23, 1933.)

LOUIS I. IGLEHEART for appellant.

T. F. BIRKHEAD and BARNES & SMITH for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming in part and reversing in part.

The question to be determined is the right of a widow who assumes the relations of a common-law wife of another after the death of her husband to adjusted

compensation under the Workmen's Compensation Law (Ky. Stats. sec. 4880 et seq.).

Andriano Giacomini, a native of Italy, married an Italian girl, and emigrated to the United States, and lived for a time in the state of Ohio. A child, Anna Giacomini, was born to them. His wife procured an absolute divorce from Andriano Giacomini November 25, 1927. He came to Kentucky and assumed the name of Andy James, and resided at Owensboro.

Thomas D. Nolan was engaged in the business of contracting, constructing a sewer for the city of Owensboro. Nolan and James accepted the Workmen's Compensation Law. While engaged in constructing an open sewer, the walls thereof caved in on James, seriously injuring him. He was taken to the city hospital, where he received treatment until his death on August 18, 1930. During the time he was residing at Owensboro he married Lorena Sosh, a native American, who survived him. Some time in October, 1930, she, as his widow, filed a claim with the Workmen's Compensation Board for adjusted compensation. After the death of her husband, Lorena James and Joe Mediate rented an apartment and lived as husband and wife. She and he informed the owner of the apartment which they rented and occupied that they were husband and wife; also the groceryman from whom they purchased and caused groceries to be charged to them as husband and wife. They kept house, executed papers, and otherwise generally held themselves out to the public as husband and wife. Nolan interposed this concubinage as a bar to her right as the widow of Andy James to compensation, insisting that the facts constitute a common-law marriage within the purview of section 4894, Ky. Statutes, and that her right to compensation ceased on her assuming such relations with Joe Mediate.

In the preparation for trial it developed that Andy James had been previously married and had an 11 year old child residing in the state of Ohio. This child by application to the Workmen's Compensation Board asserted her right as a dependent of Andy James to a portion of the compensation. The board, without attempting to pass on her right, ordered her claim to be consolidated with that of Lorena James, and redocketed the case for hearing as to her right to participate in the award. It awarded Lorena James $12 per week for

a period of 335 weeks, with interest at the rate of 6 per cent. on all past-due payments, and in addition thereto allowed for the burial expenses, "not exceeding $75.00." Thomas D. Nolan filed a petition for review in the Daviess circuit court. It approved the award of the board and referred the action to the Workmen's Compensation Board to try and determine the issue between James' child, Anna Giacomini, and Lorena James. An appeal was granted by the circuit court, though not prosecuted as required by section 738, Civil Code of Practice. An appeal has been granted to Nolan as provided by section 734 of the Civil Code of Practice.

On a return of the case to the Workmen's Compensation Board, without an application for the reopening of the award, but when reviewing it solely in accordance with the judgment of the circuit court, it reconsidered its finding respecting the common-law marriage of Lorena James, and determined that her assumed relations with Joe Mcdiate began five months after the death of her husband, and that by reason thereof she was entitled to share in the compensation for a period of five months after the death of her husband, and no more, and awarded to Anna Giacomini the whole of the compensation after the expiration of the five months next following the death of her father. The petition for review of the last award was filed in the Daviess circuit court. A judgment was rendered directing the award be apportioned to Lorena James, $6 per week for a period of 335 weeks, with directions to the Workmen's Compensation Boad to change its award of June 7, 1932, accordingly. It was further adjudged that the common-law marriage of Lorena James was no bar to her right to compensation. From this judgment the second entitled appeal is prosecuted, and Lorena James has been granted a cross-appeal.

The facts concerning the living together of Lorena James and Joe Mediate as husband and wife, and holding themselves out to the public as such, are not disputed.

It is her insistence that, since the adoption of the revised statutes, Supp. 1866, p. 734 (Act Feb. 14, 1866), there can be no such thing as a common-law marriage in this state. Estill v. Rogers, 1 Bush, 62; Klenke v. Noonan, 118 Ky. 436, 81 S. W. 421. She insists that, in the absence of evidence showing the beginning of the

28

relationship of husband and wife outside of Kentucky and in a state in which a common-law marriage is recognized, such is not, under the laws of this state, a common-law marriage. She insists that the validity of the common-law marriage interposed as a bar to her right to compensation must be determined by that line of cases wherein this court has held that common-law marriages are invalid since the adoption of the revised statutes, and that all marriages not solemnized or contracted in the presence of an authorized person or society, under our statutes, are void. Robinson v. Redd's Adm'r, 43 S. W. 435, 19 Ky. Law Rep. 1422. It is her insistence that, in the absence of evidence showing a marriage solemnized or contracted in the presence of an authorized person or society, she is entitled to compensation as the widow of her deceased husband, Andy James.

It should be conceded that such argument is amply sustained by the rule stated in the authorities, supra, and it must control her right to adjusted compensation, unless language to the contrary is found in the Workmen's Compensation Law.

In section 4894 it is written:

"Compensation to any dependent shall cease at the death or legal or common-law marriage of such dependent, and upon the cessation of compensation to or on account of any person the compensation of the remaining persons entitled to compensation shall, for the unexpired period during which their compensation is payable, be that which such persons. would have received during such unexpired period if they had been the only persons entitled to compensation at the time of the accident."

At common law no particular form of words was necessary to the validation of a marriage. Mutual consent to the relation of husband and wife was sufficient. Any words importing a present assent to being married to each other were sufficient evidence of the contract. Bouvier's Law Dict. vol. 2 (3d Ed.) p. 2099; Scott v. Scott, 200 Ky. 153, 252 S. W. 1019. "Consent alone was all that was necessary to make a valid marriage." 1 Blackstone's Commentaries, 439. In Hopkins County Coal Co. v. Williams, 219 Ky. 156, 292 S. W. 1088, it was declared that a finding by the board of a valid com-

mon-law marriage between a compensation claimant and a deceased employee, under section 4894, authorized the compensation awarded to a widow of a deceased employee. In Nall v. Wakenva Coal Co., 236 Ky. 598, 33 S. W. (2d) 631, we held that a woman living with an employee after marrying him in the mistaken belief that her former husband was dead was entitled to compensation, under section 4894, for the employee's death. In Crummies Creek Coal Corporation v. Napier, 246 Ky. 569, 55 S. W. (2d) 339, it was held that a dependent who had been awarded compensation under the section, supra, married after the award of the compensation, his right thereto ceased. These cases are illustrative of the construction of section 4894 heretofore given it by this court.

The most recent construction of this section was stated in Elkhorn Coal Corporation v. Tackett, 243 Ky. 694, 49 S. W. (2d) 571, 573; section 4894, Ky. Stats. In it this language was employed:

"Under the language of our compensation statute, supra, providing for the termination of award payments, it is not essential that a common-law marriage, though consummated within this jurisdiction, should be recognized as a valid one for all purposes, or even any purpose, unless where the assumption of the relationship in that manner is given effect by statute, and which is true under our Workmen's Compensation Act by its express terms, and which are so related to other parts of the statute as to create no ambiguity as to the meaning, intent, and purpose of the Legislature in employing them. That purpose was and is to provide for periodical payments to such dependents as partial compensation for the loss they sustained in being deprived of the support furnished them by the one upon whom they relied for support. But when such one voluntarily, and in the manner described in the statute, seeks and obtains another supporter, the reason for continuing the provided compensation would no longer exist and it was enacted that he or she should not thereafter receive it. * * * 'If parties live together ostensibly as man and wife, demeaning themselves toward each other as such, and are received into society and treated by their friends and relations as having and being entitled to that

**30**

status, the law will, in favor of morality and decency, presume that they have been legally married.' To hold, then, that there was a common-law marriage entered into by the appellee and Dr. Elliott supports the policy of the law favoring morality, decency and marriage, rather than immorality, indecency and concubinage. It also admonishes affected parties that they may not enter into a common-law marriage and still preserve the right of continued compensation by contending that their relation is meretricious, in the absence of clear and convincing proof.

"Considering the facts of this case, in the light of the cited applicable law, appellant's right to discontinue the payments under the terms of the statute granting it, is equally available whether appellee and Dr. Elliott were legally married ceremonially in conformity with some statute, or whether they assumed their relationship in such form and manner as to constitute a common-law marriage."

Considering the uncontroverted facts showing Lorena James, after the death of Andy James, voluntarily assumed with Joe Mediate the relations of a common-law wife, in the light of the language of the statute and the cases, supra, it is our conclusion that she thereby ceased to be a dependent of Andy James, as that term is used in section 4894, and thus brings her right to compensation within the Tackett Case and the reasons therefor.

Respecting the claim of Anna Giacomini, it is argued by Nolan that the evidence fails to show that she was a dependent of her father, although she was only 11 years of age. Section 4894, Ky. Statutes, expressly provides that a child or children under the age of 16 years, or over 16 years, if incapacitated from wage earning, shall be presumed to be wholly dependent upon the deceased parent with whom such child or children are living, or by whom actually supported at the time of the accident. This statutory presumption of the dependency of the child under 16 years of age is conclusive both on the court and the compensation board, where it is shown by the evidence that such child is living with the parent or actually supported at the time of the accident. Hardymon Co. v. Karze, 241 Ky. 252, 43 S. W. (2d) 678. The finding of the Compensation Board that Anna Giacom-

ini was dependent upon and supported by her father, the deceased employee, is one of fact, and conclusive on this court, in the absence of fraud where there is any competent evidence supporting it. Kingston Coal Mining Co. v. Darnell, 236 Ky. 496, 33 S. W. (2d) 356, and cases cited.

Viewing the evidence bearing on this question, we are not prepared to say there was no evidence sustaining the finding of the board that Anna Giacomini was dependent upon, and supported by, her father. The judgment in each of the cases is reversed on the original and affirmed on the cross appeal, with directions to remand the cases to the Workmen's Compensation Board, with directions to enter an order conforming herewith, and for proceedings consistent with this opinion.

Whole court sitting.