**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Cindy Mothershead BORUM, Appellee.**

**No. 04–91–00259–CV.**

Court of Appeals of Texas,
San Antonio.

May 20, 1992.

Rehearing Denied May 20, 1992.

Rehearing Denied July 8, 1992.

Carlos Villarreal, Hunt, Hermansen, McKibben & Barger, L.L.P., Corpus Christi, for appellant.

Michael G. Terry, Edwards & Terry, Corpus Christi, for appellee.

### ON APPELLANT'S MOTION FOR REHEARING EN BANC

CARR, Justice.

Appellant's Motion for Rehearing is denied en banc. The panel opinion of February 28, 1992, is withdrawn and the following en banc opinion is substituted in its place.

This is an appeal from a summary judgment in a workers' compensation case. This is the second time an appeal on this case has been presented to this court. The first appeal, 776 S.W.2d 605, also from a summary judgment, resulted in a reversal and remand to the trial court for trial. Cindy Mothershead Borum, appellee, brought suit against Texas Employers' Insurance Association (TEIA) to recommence payment of death benefits to herself arising out of her husband's accidental death. Her husband, Brian Mothershead, died while working on a drilling rig in Texas operated by Flournoy Drilling Company, Brian's employer. Flournoy Drilling Company carries its workers' compensation insurance through TEIA. TEIA suspended Borum's widow's benefits in July 1986 after it determined that Borum had remarried. Workers' compensation death benefits do not continue after remarriage of the beneficiary. TEX.REV.CIV.STAT.ANN. art. 8308-4.43(b) (Vernon Pamphlet 1991–1992). In the first appeal, this court found that Kentucky law would preclude Borum from receiving further widow's benefits under its workers' compensation laws once she began living with a man in a common-law marriage situation, even though Kentucky law specifically does not recognize common-law marriages. After remand, Borum moved again for summary judgment—on the same basis as that involved in the first appeal—that Kentucky does not recognize common-law marriage. This time she included additional summary judgment evidence, which, she contends, precludes application of the law of the case doctrine. The trial court granted Borum's motion for summary judgment and this appeal followed.

▆ The law of the case doctrine is a principle by which the initial determination of questions of law in a case are held to govern throughout the subsequent stages of the case. *Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex.1986); *Trevino v. Turcotte,* 564 S.W.2d 682, 685 (Tex.1978).

The doctrine applies only to questions of law and not to questions of fact. *Hudson v. Wakefield,* 711 S.W.2d at 630. It does not necessarily apply when the issues or facts involved in successive appeals are not substantially the same as those in the first trial, such as when a party amends its pleadings. *Id.* The application of the doctrine is addressed to the discretion of the reviewing court. *Trevino v. Turcotte,* 564 S.W.2d at 685. The doctrine of the law of the case will not apply when the decision of the former appeal is clearly erroneous. *Texas Employers Ins. Assoc. v. Tobias,* 740 S.W.2d 1, 2 (Tex.App.—San Antonio 1986, writ denied); *Barrows v. Ezer,* 624 S.W.2d 613, 617 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ); *Miller v. Winn,* 28 S.W.2d 578, 580 (Tex.Civ.App.—Fort Worth 1930, writ ref'd); *see Trevino v. Turcotte,* 564 S.W.2d at 685 (application of doctrine in discretion of appeals court); *Connecticut General Life Ins. Co. v. Bryson,* 148 Tex. 86, 219 S.W.2d 799, 800 (1949) (consistency on appeal must give way to justice when former appeal clearly erroneous).

In considering whether Kentucky law would recognize Borum's alleged common-law marriage and thus preclude her from receiving further widow's benefits under the worker's compensation scheme, we note that the laws of a sister state may be judicially noticed and that the trial court's notice of these laws is subject to review as a ruling on a question of law. TEX.R.CIV. EVID. 202; *Stine v. Koga,* 790 S.W.2d 412, 414 (Tex.App.—Beaumont 1990; writ dism'd); Hulen D. Wendorf, David A. Schlueter, & Robert R. Barton, TEXAS RULES OF EVIDENCE MANUAL II–19 (1991, 3d ed.).

This court, in its prior opinion, relied upon two Kentucky cases which held that a common-law marriage relationship, though not recognized as a valid marriage, would terminate a widow's benefits under the Kentucky worker's compensation statute. *See Nolan v. Giacomini,* 250 Ky. 25, 61 S.W.2d 1055, 1056–57 (1933); *Elkhorn Coal Corp. v. Tackett,* 243 Ky. 694, 49

S.W.2d 571, 572 (1932). The Kentucky court relied on the then current workers' compensation statute which specifically provided for such termination of benefits: "Compensation to any dependent shall cease at the death *or legal or common-law marriage* of such dependent." *Nolan v. Giacomini,* 61 S.W.2d at 1056 (construing KY.STAT. § 4894(13)), (emphasis added); *Elkhorn Coal Corp. v. Tackett,* 49 S.W.2d at 572. However, the Kentucky workers' compensation statute was amended in 1972 when the legislature changed the benefit and deleted the "common-law marriage" language. The statute now reads: "Two (2) years' indemnity benefits in one (1) lump sum shall be payable to a widow or widower *upon remarriage.*" KY.REV. STAT.ANN. § 342.750(1)(c) (Baldwin 1991) (emphasis added). There is now nothing in the statute to indicate that a common-law marriage would terminate benefits. Common-law marriage is not recognized by Kentucky law and such a relationship is not considered a marriage at all. *Pendleton v. Pendleton,* 531 S.W.2d 507, 509 (Ky.1975), *vacated on other grounds,* 431 U.S. 911, 97 S.Ct. 2164, 53 L.Ed.2d 220 (1977). In view of the fact that Kentucky amended its workers' compensation statute to delete the "common-law marriage" language prior to our original opinion in the first appeal of this case, we hold that our original opinion was clearly erroneous in its determination that Kentucky law would foreclose further death benefit payments to a widow living in a common-law marriage relationship in Kentucky. Therefore, our prior opinion does not state the law of the case.

The Texas Workers' Compensation Act, which applies to this case, provides that "[a]n eligible spouse is entitled to receive death benefits for life or until remarriage. On remarriage, the eligible spouse is entitled to receive 104 weeks of death benefits, commuted as provided by commission rule." TEX.REV.CIV.STAT.ANN. art. 8308–4.43(b) (Vernon Pamphlet 1991–1992).[1]

---

1. Article 8308–4.43(b) is part of the new Workers' Compensation Act that went into effect January 1, 1991. The new act, though rewritten, provides substantially the same benefit.

■ Since common-law marriage is recognized as a valid marriage by Texas, *see* TEX.FAM.CODE ANN. § 1.91(a)(2) (Vernon 1975); *Estate of Claveria v. Claveria*, 615 S.W.2d 164, 166 (Tex.1981), such a relationship would terminate widow's benefits under the Texas Act. However, the validity of a marriage is generally determined by the law of the place where it is celebrated rather than the law of the place where suit is filed. *Husband v. Pierce*, 800 S.W.2d 661, 663 (Tex.App.—Tyler 1990, orig. proceeding); *Braddock v. Taylor*, 592 S.W.2d 40, 42 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.).[2] Kentucky does not recognize common-law marriage. *Pendleton v. Pendleton*, 531 S.W.2d at 509. Thus, under Kentucky law the parties cannot be said to be informally married.

■ Proof of a common-law marriage pursuant to the Texas Family Code requires: 1) an agreement presently to be married; 2) living together *in this state* as husband and wife; and 3) holding each other out to the public *in this state* as husband and wife. TEX.FAM.CODE ANN. § 1.91(a)(2) (Vernon 1975). The language in subsections (2) and (3) preclude proof of a common-law marriage when the acts occurred in a state other than Texas. *Williams v. Home Indem. Co.*, 722 S.W.2d 786, 788 (Tex.App.—Houston [14th Dist.] 1987, no writ).

■ The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). In deciding whether a disputed material fact issue precludes summary judgment, the reviewing court will take as true all evidence favoring the nonmovant. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d at 548–49; *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984). Every reasonable inference from the evidence will be indulged in favor of the nonmovant, and any doubts will be resolved in his favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d at 549; *Montgomery v. Kennedy*, 669 S.W.2d at 311.

■ Summary judgment evidence establishes that Borum met Lee Allison Borum (Lee) in 1982 while both were residents of Kentucky. A short time later they began living together in Kentucky. They had a son together and the family lived together for five and one-half years in Kentucky. Borum and Lee purchased a home together in Kentucky. The enjoyed a monogamous sexual relationship, and shared household chores. Borum took Lee's last name as her own.[3] Borum was not introduced as "Mrs." Borum, but as "Miss" Borum. All their friends, family, and co-workers knew they were not married. They described their relationship to others as "living together." Borum legally

---

**2.** We note on court of appeals cases which would not apply the law of the state where the putative marriage is celebrated but would apply the significant relationship test of the RESTATEMENT (SECOND) OF CONFLICTS OF LAWS §§ 6, 145 (1971), as set out in *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984), to determine which state's law apply. *See Seth v. Seth*, 694 S.W.2d 459, 463 (Tex. App.—Fort Worth 1985, no writ). We need not address this conflicts of law analysis because we find no conflict exists. When there is no difference in the outcome between which state's law to apply, no conflict exists and we need not apply the conflict of laws tests. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d at 419. Under Kentucky law, no common-law marriage exists because that state does not recognize the informal marriage. Under Texas law, no common-law marriage exists because the parties neither lived together as husband and wife nor held themselves out as such in this state. *See Williams v. Home Indem. Co.*, 722 S.W.2d 786, 788 (Tex.App.—Houston [14th Dist.] 1987, no writ).

**3.** Evidence was presented that on life insurance policies, Borum named Lee as an alternate beneficiary and classified the relationship as "fiancee." Lee similarly named Borum as "fiancee" on his beneficiary designation of her. TEIA points to those nomenclatures as evidence of an agreement to be married. We note that the agreement element for a common-law marriage requires that there be an agreement *presently* to be married—not to marry at some point in the future. *Gary v. Gary*, 490 S.W.2d 929, 932 (Tex. Civ.App.—Tyler 1973, writ ref'd n.r.e.); *see* TEX. FAM.CODE ANN. § 1.91(a)(2) (Vernon 1975).

changed her name to Lee's last name so that she and her child would have the same last name. They had no agreement to be exclusive mutual companions: Lee felt he had his freedom to have sexual relations with another woman—"not like if [he were] married." Every one of these acts occurred outside the state of Texas, in Kentucky. Thus, under Texas law the parties cannot be said to be formally married.

The summary judgment evidence is uncontested that all alleged acts of cohabitation occurred outside the state of Texas *and* in a state that does not recognize common-law marriage. Thus, no remarriage was established and the trial court did not err in granting summary judgment in favor of Borum.

TEIA's first three points of error are overruled.

TEIA next complains that the trial court erred in its award of attorney fees. The trial court awarded Borum $37,356.00 as past due benefits plus statutory interest, ordered TEIA to pay her weekly benefits of $99.75, and awarded her $81,435.90 as attorney fees. TEIA's argument is that the trial court erred in considering Borum's life expectancy rather than using the Widow's Pension Table (and thus should presume that Borum would remarry at some point in her life) to determine the value for attorney fees.

TEIA points to *Stott v. Texas Employers Ins. Assoc.*, 645 S.W.2d 778 (Tex.1983), in which the use of the Widow's Pension Table was found to be acceptable. However, contrary to TEIA'S position, the appellate cases do not require the use of the Widow's Pension Table, but only find no error in their use. *See id.; American Employers' Ins. Co. v. Dryden*, 612 S.W.2d 223, 225 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.); *Texas Employers' Ins. Assoc. v. Critz*, 604 S.W.2d 479, 485 (Tex.Civ.App.—Texarkana 1980, writ ref'd n.r.e.).

Borum relies on *Texas Employers Ins. Assoc. v. Keenom*, 716 S.W.2d 59 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), to uphold the use of the life expectancy table. *Keenom* discussed applicable case precedent and found no abuse of dis-

cretion was shown by the court's basing attorney fees on the total amount of undiscounted compensation benefits owed the claimant. *Id.* at 65. The court based its holding on the discretionary nature of the award. *Id.* Further, the main thrust of *Keenom* was that the total amount of compensation was not discounted four per cent pursuant to article 8306a of the Workers' Compensation Act. The issue here is not the four per cent discount, but whether a life expectancy or remarriage expectancy table should be used.

 Other than the twenty-five per cent cap, the manner and amount of the award of attorney fees is within the discretion of the trial court. *Texas Employers Ins. Assoc. v. Motley*, 491 S.W.2d 395, 397 (Tex.1973); *Texas Employers Ins. Assoc. v. Keenom*, 716 S.W.2d at 65; *Texas Employers' Ins. Assoc. v. Critz*, 604 S.W.2d at 485. The amount of attorney fees awarded in a workers' compensation case is a matter for the trial court to determine without the aid of a jury. *Texas Employers Ins. Assoc. v. Motley*, 491 S.W.2d at 397; *Texas Employers' Ins. Assoc. v. Critz*, 604 S.W.2d at 485. The trial court had summary judgment evidence of the Life Tables published in 1973 by the United States Department of Health, Education, and Welfare. A 31-year-old white female (Borum had attained this age by the time of the summary judgment) has a life expectancy of an additional 47.1 years. The trial court also had summary judgment evidence of the Widow's Pension Tables which showed a life expectancy until remarriage of 15.516 years. Nothing in the Workers' Compensation Act requires the court to presume the widow will remarry. TEIA has not shown that the trial court abused its discretion in considering Borum's life expectancy in determining attorney fees rather than presuming a woman, who testified that she does not want to remarry, would actually remarry. Thus, the trial court's award of attorney fees has not been shown to be an abuse of discretion. TEIA's final claim is overruled.

The judgment of the trial court is affirmed.