

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00801-CV

Chase Allen **CURTIS**,
Appellant

v.

Gabrielle Analisa **LAPLANTE**,
Appellee

From the 454th Judicial District Court, Medina County, Texas
Trial Court No. 21-09-27360-CV
Honorable Daniel J. Kindred, Judge Presiding

Opinion by:    Lori Massey Brissette, Justice

Sitting:       Irene Rios, Justice
               Lori I. Valenzuela, Justice
               Lori Massey Brissette, Justice

Delivered and Filed: March 25, 2026

REVERSED AND REMANDED

This case involves the determination of whether the parties were engaged in an informal marriage under Texas Family Code section 2.401. Because we find the evidence is factually insufficient to support the trial court's finding that an informal marriage existed, we reverse and remand for further proceedings consistent with this opinion.

**BACKGROUND**

Chase Curtis and Gabriella Laplante met each other in California. In 2009, they moved to Texas, specifically the Dallas/Fort Worth area, before ultimately settling in Hondo, Texas. In 2013, they got engaged, publicly announcing their intention to marry on Facebook and receiving celebratory responses from their friends and family. According to Laplante, they had planned on having a wedding in 2016 and had even discussed using a friend's wedding venue in Hondo, but Laplante testified she was not in good enough health for that to happen. Instead, according to her, they just started calling each other husband and wife. But, in October of 2020, after Laplante went to be with family in Pennsylvania, she and Curtis broke up, and Curtis told her not to return to the home they shared in Texas. Then, in June of 2021, Curtis wed his current wife in a ceremonial marriage in Texas and has since had a child with his wife. After that wedding occurred, Laplante filed for divorce asserting the two had a common-law marriage.

The trial court bifurcated the trial, hearing the evidence of informal marriage under Texas Family Code section 2.401 first, and it concluded that an informal marriage did, in fact, exist. The parties then went forward with the rest of the matters to be tried. After the trial was completed, the trial court found that Curtis had acquired personal property prior to the common-law marriage and had started a business called Curtis Custom, LLC, also before the common-law marriage. But, based on the finding that Curtis committed adultery with his current wife and that the parties commingled Curtis's separate property in a way that defied segregation, the court awarded the business to Curtis as part of the community estate and ordered an unequal distribution of the marital estate. In so doing, Curtis contends the trial court valued the business at $500,000, far in excess of the value testified to by the court-appointed expert witness. The trial court then awarded a ranch

purchased by Curtis in 2018, at which he runs the business, solely to Laplante.[1] Curtis also complains that other separate property of his was also improperly awarded to Laplante, including an automobile and a boat.

Because all issues relating to the distribution of a marital estate are moot if we sustain Curtis's argument that there was insufficient evidence to support the trial court's finding that he and Laplante were informally married, we begin and end there. *See* TEX. R. APP. P. 47.1.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The trial court entered its final judgment on October 28, 2024. Appellant Curtis made a timely request for Findings of Fact and Conclusions of Law and, within thirty days of same, timely filed a Notice of Past Due Findings of Fact and Conclusions of Law. Because the trial court improperly refused the filing, we abated the appeal and remanded, ordering the trial court to sign written findings of fact and conclusions of law pursuant to Texas Rules of Civil Procedure 297. The trial court then issued Findings of Fact & Conclusions of Law and Curtis filed his Objections to and Request for Additional Findings of Facts and Conclusions of Law. The trial court took no further action. Curtis now contends this court should reverse the underlying judgment because the trial court erred in refusing to issue additional findings of fact and conclusions of law.[2]

A request for additional findings and/or conclusions may be presented if a party believes the court's work is deficient in some way. *Zhang v. Capital Plastic & Bags, Inc.*, 587 S.W.3d 82, 87 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). But, a trial court's failure to make additional findings or conclusions does not constitute reversible error unless this failure prevents the appellant from adequately presenting his appeal. *Id.*; *see AME & FE Investments, Ltd. v. NEC*

---

[1] All pending motions, including Curtis's motion for temporary orders to decrease the amount of the supersedeas bond, are dismissed as moot.

[2] Because our decision turns on whether there is an informal marriage between the parties, we look only to the findings and conclusions relating to that issue.

*Networks, LLC*, 2025 WL 2715484, at *2 n.2 (Tex. App.—San Antonio September 24, 2025, no pet.) (citing *Villarreal v. Guerra*, 446 S.W.3d 404, 414 (Tex. App.—San Antonio 2014, pet. denied). Thus, "[t]he controlling issue is whether the circumstances of the particular case require the party to guess at the reasons for the trial court's decision." *In re Marriage of C.A.S. and D.P.S.*, 405 S.W.3d 373, 382 (Tex. App.—Dallas 2013, no pet.).

Curtis points to the trial court's judgment which states that "the parties married on June 1, 2014." However, the trial court's subsequent findings of fact state: "Laplante and Curtis, while in Texas beginning in January 2014 agreed they were married, lived together as husband and wife, continually and publicly presented themselves as husband and wife, and remained in Texas." Because there is a conflict between findings of fact and the judgment, the findings of fact control for appellate purposes. TEX. R. CIV. P. 299a; *see, e.g., Borusan Mannesmann Pipe US, Inc. v. Hunting Energy Servs., LLC*, 716 S.W.3d 572, 575 n.2 (Tex. 2025) (per curiam) (citing Rule 299a for same).

Thus, the issue before us is whether the record at trial is legally or factually sufficient to support the trial court's finding that all three elements of informal marriage were present beginning in January of 2014. *See In re J.J.F.R.*, 2016 WL 3944823, at *1 (Tex. App.—San Antonio 2016, no pet.). Because we cannot agree that Curtis is prevented from adequately addressing the sufficiency issue by the court's failure to make additional findings and conclusions, we overrule Curtis's first issue.

## SUFFICIENCY OF THE EVIDENCE

Only sixteen states out of fifty recognize an informal marriage, otherwise known as "common-law marriage." Texas is one of them. *See* TEX. FAM. CODE § 2.401. Texas will recognize an informal marriage if the evidence demonstrates either that the parties filed a declaration of their

marriage with the county clerk or that "the man and the woman agreed to be married and after the agreement they lived together in this state as husband and wife and there represented to others that they were married." *Id.* § 2.401(a)(2).

But, by recognizing an informal marriage, Texas has not created an environment where a party can simply fall down a slippery slope, landing clumsily into a marriage.[3] It still requires an agreement to be married—in other words, a commitment—a decision made together not to be married in the future but to be married in the present sense. *See Leyendecker v. Uribe*, No. 04-17-00163-CV, 2018 WL 442724, at *2 (Tex. App.—San Antonio Jan. 17, 2018, pet. denied); *Tex. Employers' Ins. Ass'n v. Borum*, 834 S.W.2d 395, 399 (Tex. App.—San Antonio 1992, writ denied). We have all heard the saying that marriage is not something to be entered into lightly, but reverently and deliberately. Because the commitment of marriage dramatically alters the spouse's legal rights and financial status, courts have uniformly held that evidence of casual references to each other as spouses is not enough to establish an informal marriage. *See, e.g., Assoun v. Gustafson*, 493 S.W.3d 156, 160 (Tex. App.—Dallas 2016, pet. denied) ("Occasional informal references to another as their spouse will not prove an agreement to be married."); *In re C. M. V.*, 479 S.W.3d 352, 360 (Tex. App.—El Paso 2015, no pet.) ("An agreement to be married cannot be inferred from the mere evidence of cohabitation and representations of marriage to others, but such evidence may be circumstantial evidence of an agreement to be married."); *Small v. McMaster*, 352 S.W.3d 280, 285 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) ("Occasional introductions as husband and wife are not sufficient to establish the element of holding out" to the

---

[3] In 1989, the Texas Legislature attempted to abolish common-law marriage, but when the effort failed, it instead amended the Texas Family Code in an attempt to make it more difficult to prove. *See Russell v. Russell*, 865 S.W.2d 929, 931 (Tex. 1993) (citing Act of June 14, 1989, 71st Leg., R.S., ch. 369 § 9, 1989 Tex. Gen. Laws 1458, 1459, which revised Texas Family Code section 1.91(b), now section 2.401). It is questionable as to whether they succeeded in that endeavor.

public that they are married, as required for informal marriage); *Thomas v. Doolittle*, No. 03-23-00498-CV, 2024 WL 4394315, at \*8 (Tex. App.—Austin Oct. 4, 2024, no pet.) (Proof of informal marriage "requires more than occasional references to each other as 'wife' and 'husband.'").

It takes more.

Certainly, a declaration, filed with the county clerk wherein each party attests, "I solemnly swear (or affirm) that we, the undersigned, are married to each other," is clear evidence of an intent and agreement to be married. *See* TEX. FAM. CODE § 2.401(a)(1). But, those are the easy cases. Much more difficult are the cases where the parties made no such declaration and, instead, one party relies on circumstantial evidence to prove the couple had an agreement that the other party now says never existed. Because those cases are so difficult and because the ramifications are so extensive, courts have declined to draw a bright line and have, instead, routinely reiterated that "the circumstances of each case must be determined based upon its own facts." *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993); *see, e.g., C. M. V.*, 479 S.W.3d at 360; *Uribe*, 2018 WL 442724, at \*2.

What is clear, though, is that we should find an informal marriage only when all three elements of Section 2.401 are present: (a) an agreement to be married; (b) cohabitation in Texas as husband and wife after the agreement; and (c) representations to others in Texas that they are, in fact, married. *J.J.F.R.*, 2016 WL 3944823, at \*1 (citing *Small*, 352 S.W.3d at 283 ("An informal marriage does not exist until the concurrence of all three elements.")). Only when all elements exist at the same time can we hold two people have deliberately entered into the state of marriage. *See id.*; *Bolash v. Heid*, 733 S.W.2d 698, 699 (Tex. App.—San Antonio 1987, no writ).

**STANDARD OF REVIEW**

"A trial court's findings of fact issued after a bench trial have the same weight, and are judged by the same appellate standards, as a jury verdict." *Integrity Pain Management, PLCC v. Davis & Assoc. Medical Consultants, LLC*, 2024 WL 591904, at *7 (Tex. App.—San Antonio Feb. 14, 2024, no pet.) (quoting *Tex. Outfitters Ltd. v. Nicholson*, 572 S.W.3d 647, 653 (Tex. 2019)). Here, Curtis challenges both the legal and factual sufficiency of the trial court's findings.

When reviewing a matter for legal sufficiency, we will sustain the challenge if the record reveals: (1) the complete absence of evidence supporting the finding; (2) the court is barred from giving weight to the only evidence offered to support the finding; (3) the evidence offered to prove the finding is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of the finding. *J.J.F.R.*, 2016 WL 3944823, at *2 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 809 (Tex. 2005)). During such a review, we will "credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* (citing *City of Keller,* 168 S.W.3d at 827). A factual sufficiency challenge, on the other hand, requires us to examine the entire record to determine if the findings are "so contrary to the overwhelming weight of the evidence that they are clearly wrong and unjust." *Id.* (quoting *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)). Under either standard, we remain mindful that the trier of fact is the sole judge of a witness's credibility and the weight to be given their testimony. *Id.* (citing *City of Keller*, 168 S.W.3d at 819–20).

**AGREEMENT TO BE MARRIED**

To establish an informal marriage, "the evidence must show the parties intended to have a present, immediate, and permanent marital relationship and that they did in fact agree to be husband and wife." *Small*, 352 S.W.3d at 283. In *Russell*, the Texas Supreme Court stated that an

agreement to be married can be proven by circumstantial evidence. 865 S.W.2d at 931. But the court stated that "[a] finding of legally and/or factually sufficient evidence of cohabitation or public representation will not necessarily constitute legally and/or factually sufficient evidence of an agreement to be married," referencing the following language:

> In a society in which non-marital cohabitation for extended periods of time is far more common than it once was, the fact-finder will have to weigh the evidence of a tacit agreement more carefully than in the past. As the statute now stands, an occasional uncontradicted reference to a cohabitant as "my wife" or "my husband" or "mine" will not prove a tacit agreement to be married without corroboration.

*Id.* at 932 (quoting Joseph W. McKnight, *Family Law: Husband and Wife,* 44 Sw. L.J. 1, 2–3 (1990)). In fact, the court in *Russell* held that the court of appeals had "erroneously inferred an agreement to be married" by improperly relying only on evidence of cohabitation and public representation. *Id.* at 934.

We must first point out that many of the findings relied upon by the trial court are by themselves no evidence of an informal marriage, including findings that they were a romantic couple for over fourteen years, that they lived as a couple in other states prior to moving to Texas,[4] that they shared joint bank accounts, that Curtis provided all income and support for Laplante during the relationship, that they filled out joint lease applications when renting homes, that they borrowed money together, that Curtis posted on Facebook that they closed on a home where they would "make many more memories," and that Curtis ended the relationship by telling Laplante she was not allowed to return to their home. All of these actions are taken every day by couples with no current intention of being in a legally binding marriage and do not, *by themselves*, prove

---

[4] Cohabitation is only relevant if the evidence shows the couple lived together as husband and wife in Texas after the agreement to marry has been entered into. TEX. FAM. CODE § 2.401(2).

that Laplante and Curtis either held themselves out as a married couple or that they had a definite agreement to be married.[5]

Thus, we are left with whether these actions gain significance in light of the following evidence: Curtis and Laplante both testified that they lived together in Texas since 2009 and that they got engaged to be married in 2013. In late June of 2014, Curtis sent an email to a doctor seeking information about potential medical treatment for Laplante, referring to her in the email as "my wife." The evidence also demonstrates that Curtis referred to Laplante's family members [who lived in California] as "in-laws," referred to Laplante as his wife to business partners in Pennsylvania, and signed her up to an industry conference in Las Vegas in 2020 as a spouse.[6] According to a witness, Curtis introduced Laplante as his wife at an industry event in South Texas in January of 2018. And, in December of 2018, he introduced Laplante as his wife during a brief conversation with the owner of the ranch he purchased in Hondo, Texas. The evidence also includes Laplante's testimony that she held herself out as Curtis's wife.[7] Finally, Curtis posted a February 2018 Facebook birthday wish for Laplante, referring to her as "my wife."

---

[5] While the trial court made a finding that Curtis posted on Facebook a happy anniversary post that referred to Laplante as his wife, the exhibits admitted into evidence do not include any such post and we can find no reference to such a post in the record. This finding cannot support the existence of an agreement to be married since there is a complete absence of evidence supporting it. *See J.J.F.R.*, 2016 WL 3944823, at *2.

[6] Curtis contends that we should not consider evidence of public representation that occurred outside the state of Texas. We agree that, with regard to the third element of informal marriage, the statute requires the parties prove they acted *in Texas* to represent that they were married. *See infra*. But, in regard to the question of whether there is enough circumstantial evidence to demonstrate the first element—an agreement to be married—we see no limitation, statutory or otherwise, in considering evidence of their actions outside of Texas.

[7] The evidence also includes a card for Curtis signed by Laplante as "Your Wifey." However, Laplante's testimony that she so signed the card because she "was his wife" has even less probative value than her other self-serving assertions, since "wifey" is commonly used colloquially to refer to a person who is not legally married. *See Estate of Gomez-Guzman*, No. 02-23-00451-CV, 2024 WL 3819306, at *3 (Tex. App.—Fort Worth Aug. 15, 2024, no pet.) (explaining statements "made in a self-serving context" have less probative value of agreement to be married than assertions of marriage with consequence of liability); *West v. Ward*, No. 09-24-00060-CV, 2026 WL 234041, at *2, *5, *8 (Tex. App.—Beaumont Jan. 29, 2026, no pet. h.) (holding legally and factually insufficient evidence of agreement to be married despite alleged husband's comment "wifey" on alleged wife's Instagram post and other Instagram content hinting indirectly at marriage).

From this evidence, the closest thing we get to direct evidence of an agreement is the February 2018 Facebook post that reads: "Happy birthday to my best friend (my wife) Gabrielle. Here's to another year." The only testimony about the post came from Curtis who stated that Laplante was sitting next to him as he wrote it and, after he typed "my best friend," she said, "I'm your wife. Write wife." Curtis testified that he responded, "You want me to write wife, it will make you feel better?" And, when she said yes, he put it in parenthesis and pressed the button necessary to post it.

We hesitate to equate the Facebook post, absent evidence that both parties intended for it to be such, with a formal declaration of an agreement to be married. We note the contrast with such cases where evidence of a direct agreement is introduced, even if by just one of the parties. For example, in *Small*, the wife testified that she and her husband both verbally agreed to be married when she gave the husband a custom-made wedding ring in a private ceremony on a specific date. 352 S.W.3d at 283–84. Likewise in *Doolittle*, 2024 WL 4394315, at *6–7, Doolittle testified that they agreed to be married in a specific month and year, and they signed marital status affidavits for a real estate closing stating they had been married for years.

In contrast, Curtis's Facebook post did not announce their marriage, as Curtis actually did when he ceremonially married his current wife after this relationship dissolved. *See Small*, 352 S.W.3d at 287 n.4 ("The act of one of the parties to an alleged common-law marriage in celebrating a ceremonial marriage with another person, without having first obtained a divorce, tends to discredit the first relationship and to show that it was not valid.") Instead, it seems to be simply the use of an affectionate nickname, an act of acquiescence versus agreement.

Nevertheless, on the record before us, while it is clear the evidence wholly fails to support an agreement to be married in January of 2014, we cannot hold the evidence is legally insufficient

to support the contention that an agreement to be married may have existed at some point in time.[8] *See J.J.F.R.*, 2016 WL 3944823, at *1.

But, in a factual sufficiency review, we must look to the entire record to determine if the trial court's findings are "so contrary to the overwhelming weight of the evidence that they are clearly wrong and unjust." *Id.* at *2 (quoting *Cain*, 709 S.W.2d at 176). In that review, we first note that the evidence of public representation here is of a social nature. We must be mindful that evidence of the mere reference to each other as spouses offered as circumstantial evidence of an agreement does not go as far as a public representation that demonstrates the party making it understood their legal rights would change as a result. *See* McKnight, *Family Law: Husband and Wife*, 44 Sw. L.J. at 2–3 ("A forthright assertion of marriage with the consequence of liability . . . may on the other hand be far more probative of a tacit agreement to be married."); *see also Flores v. Flores*, 847 S.W.2d 648, 652 (Tex. App.—Waco 1993, writ denied) (stating assertion of marriage with consequence of liability "such as when an alleged spouse seeks admission of the other to a hospital or the filing of a joint income tax return [] may be far more probative" of agreement to be married than statements "made in a self-serving context"); *Estate of Gomez-Guzman*, No. 02-23-00451-CV, 2024 WL 3819306, at *3 (Tex. App.—Fort Worth Aug. 15, 2024, no pet.) (concluding sufficient evidence of agreement to be married from three years of joint tax

---

[8] We do not find any support for the trial court's finding that the agreement to be married existed in January of 2014 or for the trial court's finding that an email was sent to a doctor in which Curtis referred to Laplante as his wife in January of 2014. Such email, admitted into evidence, clearly states—as do both parties—that the email was sent in June of 2014. And, the only direct evidence that could even be potentially construed as an agreement is, as set forth above, the Facebook post of February 2018. But, we cannot render a judgment in favor of Curtis for legally insufficient evidence of marriage in January of 2014, because there is legally sufficient evidence that the parties may have been married at some later point. Therefore, as set forth *infra*, a remand for a new trial is instead necessary. *See Montemayor v. Montemayor*, No. 01-23-00374-CV, 2025 WL 898315, at *8 (Tex. App.—Houston [1st Dist.] Mar. 25, 2025, no pet.) (remanding in part for a new property division of the marital estate even though evidence was legally and factually insufficient to support trial court's finding that parties agreed to be informally married on January 1, 2012, a year before their ceremonial marriage). Further, because a different date of marriage would dramatically impact the marital estate to be distributed, a full new trial would be required in the event new and additional evidence is introduced to support an informal marriage on remand.

returns, joint auto insurance policies, description as "married couple" in mortgage deeds, and marital status affidavit submitted when refinancing mortgage); *Osojie v. Osojie*, No. 03-08-00688-CV, 2009 WL 2902743, at *5 (Tex. App.—Austin Aug. 27, 2009, no pet.) (mem. op.) (noting that circumstantial evidence of agreement to be married included marriage proponent's testimony that the parties had "filed joint tax returns, opened bank accounts, and purchased property as husband and wife"). Generally, purely social introductions are not enough. *See, e.g., C. M. V.*, 479 S.W.3d at 360 ("An agreement to be married cannot be inferred from the mere evidence of cohabitation and representations of marriage to others[.]").

Notably, we do not see in the record before us evidence that would normally be present with a distinct agreement to be married, such as a change in tax status from single to married, the addition of Laplante as a spouse on car, life, or health insurance, or the inclusion of Laplante on deeds to property acquired during the marriage (as required by Texas law). And, we note the lack of any celebration of their marriage similar to what actually did occur after their engagement in 2013.

In fact, taking into account evidence contrary to the trial court's finding—evidence that could not be ignored on credibility grounds—we must recognize that during the alleged marriage Curtis signed deeds for property as "an unmarried man." He filed his taxes as a "single person." And, upon ending this relationship, Curtis married another woman and did so in a formal ceremony, announcing the wedding on Facebook. *See Small*, 352 S.W.3d at 287 n.4 (recognizing a later ceremonial marriage by the party contesting a common-law marriage, completed without any attempt to "divorce" the party seeking to prove such a marriage, "tends to discredit the first relationship and to show that it was not valid"); *Flores*, 847 S.W.2d at 652 (stating same). In fact, Laplante's cousin even flew in to attend Curtis' wedding to his current wife. But, most importantly

and of great significance, is the fact that Laplante—the party seeking to prove a definite agreement to be married as far back as 2014—admitted to filling out a form at a doctor's office in September of 2020 in which she labeled Curtis not as her husband but as her fiancé.

On this record, we cannot hold the evidence is factually sufficient to support a finding of an agreement to be married.

### PUBLIC REPRESENTATION OF MARRIAGE

Next, we look to whether there is legally or factually sufficient evidence of public representation as required by Texas Family Code section 2.401(a)(2). Section 2.401(a)(2) requires evidence that the parties agreed to be married, lived together as husband and wife "in this state," and "*there* represented to others that they were married." Tex. Fam. Code § 2.401(a)(2) (emphasis added); *see Tex. Employers' Ins. Assn. v. Borum*, 834 S.W.2d. 395, 399 (Tex. App.—San Antonio 1992, writ denied) (holding Texas Family Code section 2.401 requires proof that acts representing the existence of a common-law marriage occurred in the state of Texas). This statutory requirement is synonymous with the old judicial requirement of "holding out to the public." *Gomez-Guzman*, 2024 WL 3819306, at \*5 (quoting *Garcia v. Garcia*, No. 02-11-00276-CV, 2012 WL 3115763, at \*4 (Tex. App.—Fort Worth Aug. 2, 2012, no pet.)). Courts have construed this requirement to mean that a critical component in legally binding the parties to a common-law marriage is the determination of "whether the couple had a reputation *in the community* for being married." *Small*, 352 S.W.3d at 285 (introductions as husband and wife are not sufficient) (emphasis added). "Proving a reputation for being married requires evidence that the couple 'consistently conducted themselves as husband and wife in the public eye or that the community viewed them as married.'" *Id.* (quoting *Danna v. Danna*, No. 05-05-00472-CV, 2006 WL 785621, at \*1 (Tex. App.—Dallas Mar. 29, 2006, no pet.) (mem. op.).

Here, Laplante brought forth several witnesses who testified that Curtis publicly introduced her as his wife, referred to himself as a son-in-law, and referred to Laplante's family members as his in-laws. But, all but two of these witnesses were from out of state and testified to representations made in those other states.[9] Laplante's witness Paul Reid testified Curtis introduced Laplante as his wife during a conversation in Texas in 2018, but Reid also testified he does not recall Laplante ever referring to Curtis as her husband. And Laplante's witness Linda Pizzuti, the owner of a ranch that briefly met them upon a real estate closing that occurred six years prior to the trial, testified Curtis and Laplante introduced themselves to her as husband and wife, even though the actual closing documents listed him as "an unmarried man."

To prove the contrary, Curtis brought forward five witnesses from the community in which they resided who stated Curtis and Laplante never referred to each other as husband and wife, instead using each other's names or the term "fiancé." We realize, and honor the likelihood, that the trial court may not have believed the testimony of Curtis's witnesses. But the fact remains that the only evidence of representation offered into evidence about how they comported themselves within their Texas community—a community the evidence showed they were very actively involved in—was: (a) the email to a doctor in the Dallas/Fort Worth area ten years before the trial of this matter wherein Curtis sought information about his "wife's" Lyme disease, (b) the testimony of Pizzuti and Reid about brief introductions made six years before the trial and (b) the Facebook post referenced above.

---

[9] We note the trial court's findings of fact refer to the fact that these representations were made "while living in Texas." But, there is no finding by the trial court that any of the representations to family members in California and Pennsylvania, to business partners in Pennsylvania, or to business colleagues at an industry event in Las Vegas impacted what people in Texas believed was the nature of their relationship. And, even if the findings were clear in that regard, the record does not support such.

We note, again, that an informal marriage should only be found if all three elements exist at the same time. *J.J.F.R.*, 2016 WL 3944823, at *1. Above, we have found that the only significant direct evidence that could even be potentially construed as an agreement to be married is the Facebook post in February of 2018. Thus, the email sent in June of 2014 is of no import. Thus, we are left with three social references, all of which occurred in 2018 (six years prior to trial), and no evidence of any representation made after that date. We are also left with Laplante's own representation, made in September 2020, that Curtis was her fiancé, not her husband.

This evidence is not sufficient to create a reputation of being married within their community, nor does it demonstrate that they consistently presented themselves as husband and wife in Texas, especially because these references are controverted by five witnesses from Curtis's community who have known the parties for many years. *See Small*, 352 S.W.3d at 285 (recognizing "[o]ccasional introductions as husband and wife are not sufficient to establish the element of holding out" and evidence must be consistent enough to create reputation of being married within their community); *Doolittle*, 2024 WL 4394315, at *8 (stating same); *Van Hooff v. Anderson*, No. 07-14-00080-CV, 2016 WL 193172, at *5 (Tex. App.—Amarillo Jan. 14, 2016, no pet.) (stating same). For that reason, we find there is factually insufficient evidence of the public-representation element of common-law marriage.[10]

## CONCLUSION

Because we find there is factually insufficient evidence to support the trial court's determination that an informal marriage existed, we reverse the trial court's judgment and remand for a new trial. *See Small*, 352 S.W.3d at 287–88 (reversing and remanding for new trial because

---

[10] Nevertheless, because there was more than a scintilla of evidence of public representation of marriage, we do not hold the evidence was legally insufficient. *See J.J.F.R.*, 2016 WL 3944823, at *1.

factually insufficient evidence of public representation of marriage); *Van Hooff*, 2016 WL 193172, at *7 (same).

Lori Massey Brissette, Justice